ANITA P. ARRIOLA
ARRIOLA, COWAN & BORDALLO
P.O. BOX X, AGANA, GUAM 96910
TELEPHONE: (671) 477-9731/33
FAX: (671) 477-9734

Counsel for Plaintiffs

**FILED**

Office of the Clerk
DISTRICT COURT OF GUAM
AGANA, GUAM

JUN 2 6 1990

154

MARY L. MICHELS
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE TERRITORY OF GUAM

| | |
|---|---|
| GUAM SOCIETY OF OBSTETRICIANS AND GYNECOLOGISTS; GUAM NURSES ASSOCIATION; THE REVEREND MILTON H. COLE, JR.; LAURIE KONWITH; EDMUND A. GRILEY, M.D.; WILLIAM S. FREEMAN, M.D.; JOHN DUNLOP, M.D., on behalf of themselves and all others similarly situated, and all their women patients, <br><br> Plaintiffs, <br><br> vs. <br><br> JOSEPH F. ADA, in his individual and official capacities, LETICIA ESPALDON, GEORGE B. PALICAN, ELIZABETH BARRETT-ANDERSON, GLORIA B. NELSON, THOMAS J.M. CALVO, FLORENCIO T. RAMIREZ, LEONILA L.G. HERRERO and MICHAEL F. PHILLIPS, THE BOARD OF DIRECTORS OF THE GUAM ELECTION COMMISSION, in their official capacities, together with all others similarly situated, <br><br> Defendants. | CIVIL ACTION NO. 90-00013 <br><br><br> CLASS ACTION |

## SECOND AMENDED COMPLAINT

Plaintiffs, by their undersigned attorneys, bring this Complaint against the defendants, their employees, agents and successors and in support thereof aver the following:

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 1 of 30

## I.  Preliminary Statement

1.  This action challenges Public Law 20-134, the 1990 Act to repeal and reenact § 31.20 of Title 9, Guam Code Annotated, to repeal §§ 31.21 and 31.22 thereof, to add § 31.23 thereto, to repeal subsection 14 of section 3107 of Title 10, Guam Code Annotated, relative to abortions (collectively "the Act") as violating the United States Constitution, 42 U.S.C. § 1983, the Guam Organic Act, 48 U.S.C. §§ 1421, 1421b et seq., and Guam Government Code § 1104 (Equal Rights Statute). (A copy of the enactment is attached as Exhibit "A".)

2.  The Act blocks women's access to necessary abortions and to other medical care, including counseling and referral. It also infringes the rights of physicians, nurses and other health care providers to provide abortions and related care. Plaintiffs seek declaratory and injunctive relief on the ground that the Act violates the right to make personal reproductive decisions, the right to bodily integrity, the right of informational privacy, the right to free speech, the right to equal protection under the law, the right to due process of law, the right to freedom of religion, the right to freedom of association, the right to be free from involuntary servitude, and the right to be free from cruel and unusual punishment; all as guaranteed by the First, Fourth, Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and 48 U.S.C. § 1421b of the Guam Organic Act.

- 2 -

ARRIOLA, COWAN & BORDALLO, AGANA, GUAM 96910

## II. Jurisdiction

3. Jurisdiction is conferred on the Court by 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and the Fourteenth Amendment to the United States Constitution.

4. Plaintiffs' claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

## III. Parties

### A. Plaintiffs

5. Plaintiff Guam Society of Obstetricians and Gynecologists is an organization comprised of physicians licensed to practice medicine in the territory of Guam who specialize in the practice of obstetrics and gynecology. Each member of the Society performs abortions during the first and second trimester of pregnancy in Guam. The Society sues on its own behalf and on behalf of its members.

6. Plaintiff Guam Nurses Association is a non-profit organization comprised of approximately ninety (90) nurses who are registered in the territory of Guam and who provide general medical care and treatment to pregnant women on Guam, including abortion counseling and other ancillary services. The Guam Nurses Association sues on its own behalf and on behalf of its members.

7. Plaintiff The Reverend Milton H. Cole Jr. is an Episcopal priest at St. Andrews of the Philippine Sea, Agat, Guam. As a priest and member of the Episcopal Church, he

ARRIOLA, COWAN & BORDALLO, AGANA, GUAM 96910

- 3 -

believes and preaches that the decision to have an abortion is a matter involving the exercise of a woman's religious conscience and that, in order to make a conscientious decision regarding pregnancy, she must be counseled on all options available to her, including abortion. He assists and counsels his congregation to decide what actions are morally required according to the dictates of their religion and their own consciences. The Act prohibits him from giving proper spiritual counseling on pregnancy.

8. Plaintiff Laura Konwith is a U.S. citizen and a resident of the territory of Guam. She is a member of the Jewish faith, which does not believe a fertilized egg is a person. In addition, plaintiff Konwith believes and follows the teachings of her Jewish faith that, contrary to the Act, a woman's health must take precedence over that of the fetus until the birth of the child and that it is the religious duty of a woman to have an abortion under certain circumstances.

9. Plaintiffs Edmund A. Griley, M.D., William Freeman, M.D., and John Dunlop, M.D. are physicians licensed to practice medicine in the territory of Guam who specialize in the practice of obstetrics and gynecology. Each physician performs abortions during the first and second trimesters of pregnancy at their medical facilities in Guam. Plaintiffs Griley, Freeman and Dunlop sue on their own behalf, on behalf of others similarly situated, on behalf of the counselors and staff employed at their facilities, and on behalf of their women patients who need abortions and other medical care impeded by the Act.

- 4 -

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 4 of 30

10. Plaintiffs Griley, Freeman and Dunlop all have pregnant women patients who need or want abortions for a variety of familial, social, emotional, physical and economic reasons. These women include victims of rape and incest and women who want abortions because their fetus has serious anomalies.

B. Defendants

11. Defendant Joseph F. Ada is the Governor of the territory of Guam. He is the chief executive officer of the territory and it is his legal duty under the Organic Act to ensure that the laws of the territory, including the Act, are faithfully executed. Defendant Ada signed into law Public Law 20-134 and issued a public statement indicating his reasons for signing the bill into law. He is sued in his individual and official capacities.

12. Defendant Leticia Espaldon is the Director of the Department of Public Health and Social Services for the territory of Guam. She is responsible for the implementation and enforcement of those provisions of the Act that pertain to the Department of Public Health and Social Services. She is sued in her official capacity.

13. Defendant George B. Palican is the Administrator of the Guam Memorial Hospital in the territory of Guam. He is responsible for the implementation and enforcement of those provisions of the Act that pertain to the Guam Memorial Hospital. He is sued in his official capacity.

14. Defendant Elizabeth Barrett-Anderson is the Attorney General of the territory of Guam. She is responsible for

- 5 -

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 5 of 30

enforcement of the Act and for the criminal prosecutions of persons charged with violating the Act. Defendant Barrett-Anderson issued a memorandum to the Guam Chief of Police directing the manner in which Public Law 20-134 was to be enforced. She is sued in her official capacity.

15. Defendants Gloria B. Nelson, Thomas J.M. Calvo, Florencio T. Ramirez, Leonila L.G. Herrero and Michael F. Phillips are members of the Board of Directors the Guam Election Commission. They are responsible for the implementation and enforcement of those provisions of the Act that pertain to the Guam Election Commission, in particular, the referendum provision of Section 7 of the Act.

16. Upon information and belief, unless restrained by order of the Court, all defendants will perform their official duties to ensure that the Act is enforced and will cause criminal prosecutions or license suspension or revocation proceedings to be instituted against the physician or nurse plaintiffs, or against others who may aid or assist them, for failure to comply with the Act. Upon information and belief, defendants will also cause such proceedings to be brought against all persons who administer or employ medication, drugs, instruments or other means to cause an abortion; who solicit or take drugs or submit to an attempt to cause an abortion; or who solicit any woman to submit to any operation or use any means whatever to cause an abortion. Women who have abortions or practice certain forms of birth control on Guam also will be criminally charged. Upon information and belief, defendants will also cause a referendum to be held

- 6 -

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 6 of 30

on the Act and will expend an enormous, unnecessary amount of public funds on the costs and expenses of the referendum.

## IV. Class Action Allegations

### A. Plaintiff Allegations

17. Plaintiffs Edmund A. Griley, M.D., William Freeman, M.D., and John Dunlop, M.D. are physicians who provide abortions in the territory of Guam.

18. Plaintiffs Griley, Freeman and Dunlop sue on behalf of themselves and all others similarly situated and seek, pursuant to Fed. R. Civ. P. 23(b) (1)(A) and (2), to represent a class composed of all licensed physicians and counselors in Guam who provide abortions, birth control, counseling, referrals, or information about abortion.

19. The prerequisites to class certification are met in that:

(a) At the end of 1989, there were at least seven (7) gynecologists practicing in Guam and at least nine (9) facilities in Guam where abortions are performed, each of which has one or more physicians, counselors and other staff. The class is numerous so that joinder of all members is impracticable;

(b) The provisions of the Act apply with equal force to all members of the class, such that questions of law and of fact relating to the constitutionality of the Act are common to all members of the class;

(c) The claims of the representative parties as to the unconstitutionality of the provisions of the Act are

- 7 -

ARRIOLA, COWAN & BORDALLO, AGANA, GUAM 96910

typical of those in the class; and

(d) The representative parties have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class.

20. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to the constitutionality of the Act or the particular provisions thereof and thus a risk of establishing incompatible standards of conduct for the defendants who are charged with enforcing the Act's provisions.

21. Plaintiffs Griley, Freeman and Dunlop also sue on their own behalf and on behalf of their women patients who are capable of childbearing on Guam and who seek abortion, contraception, and relased reproductive health services.

22. The prerequisites to class certification are met in that:

(a) Upon information and belief, in 1990, there are approximately 31,394 women of childbearing age on Guam. Upon information and belief, many of these women will seek and desire to obtain abortions, contraception, and related reproductive health services; consequently, the class is numerous so that joinder of all members is impracticable;

(b) The provisions of the Act apply with equal force to all members of the class, such that questions of law and of fact relating to the constitutionality of the Act are common to all members of the class;

(c) The claims of the representative parties as

- 8 -

to the unconstitutionality of the provisions of the Act are typical of those in the class; and

(d) The representative parties have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class.

23. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to the constitutionality of the Act or the particular provisions thereof and thus a risk of establishing incompatible standards of conduct for the defendants who are charged with enforcing the Act's provisions.

B. Defendant Allegations

24. Defendant Elizabeth Barrett-Anderson is sued in her official capacity as the Attorney General of Guam and, pursuant to Fed. R. Civ. P. 23(b)(1)(A), as the representative of the class of all prosecuting attorneys of the territory of Guam.

25. The prerequisites to certification of a defendant class are met in that:

(a) There are fourteen (14) prosecuting attorneys rendering the class so numerous that joinder is impracticable;

(b) Because each member of the class is charged with enforcing the Act in the territory of Guam, questions of law and of fact relating to the constitutionality of the Act's provisions are common to the class;

(c) The defenses of defendant Barrett-Anderson will be typical of the defenses of the class; and

ARRIOLA, COWAN & BORDALLO, AGANA, GUAM 96910

- 9 -

(d) Defendant Barrett-Anderson will fairly and adequately represent the interests of the class.

26. The prosecution of separate actions against individual members of the defendant class could create a risk of inconsistent adjudications with respect to members of the defendant class thus establishing incompatible standards of conduct for physicians presently performing abortions, desiring to perform abortions, or referring patients for abortions in Guam.

## V. Factual Allegations

27. Upon information and belief, in 1989, over 500 abortions were performed and reported in Guam and a comparable number of women would seek and obtain abortions in 1990, but for the Act. Some women who seek abortions do so because they suffer from diseases or conditions including, but not limited to: diabetes, cancer, essential hypertension, cardiac disease, kidney disease, history of post partum hemorrhaging, or sickle cell anemia. For many of these women, carrying a pregnancy to term will increase the health or life risks of pregnancy and childbirth. Other women seek abortions because of their age, for psychological, emotional, familial or economic reasons, or because fetal anomalies are discovered sometimes late in pregnancy. Still other women feel that their religious or conscientious beliefs mandate the procedure. Some abortions are performed for victims of rape and incest.

28. Abortion at any stage of pregnancy is considered an extremely safe surgical procedure; eleven times safer from

- 10 -

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 10 of 30

the standpoint of mortality (death) than carrying a pregnancy to full term. Early abortion is safer than later abortion.

29. Each week of delay in obtaining an abortion increases a woman's mortality risk about 50%. Nevertheless, even second trimester abortions (after 12 weeks of pregnancy) are safer than carrying the pregnancy to full term.

30. Members of the Society regularly treat women patients who need abortion services. Before the Act, physicians either performed the abortions or referred patients to other physicians. Now they can do neither because they are subject to the criminal and civil penalties of the Act.

31. Physicians and medical providers desire to and are obligated by law and medical ethics to provide comprehensive and confidential medical care of the highest quality to their patients.

32. Medical doctors and nurses who are plaintiffs provide medically necessary abortion services to women whose health problems may not fall within the definition of "endanger[ing] the life of the mother" or "gravely impair[ing] the health of the mother" as contained in the Act. Plaintiffs do not know how "gravely" or "endangering" will be defined and are therefore chilled in the exercise of their medical judgment for fear of criminal liability and professional censure.

33. Medical doctors and nurses who are plaintiffs encounter patients with medical conditions that necessitate that they provide counseling, information and at times referral for abortion. Plaintiffs do not know how "solicitation" or

ARRIOLA, COWAN & BORDALLO, AGANA, GUAM 96910

- 11 -

"soliciting" will be defined and are therefore inhibited in the exercise of their medical judgment for fear of criminal liability and professional censure.

34. The purpose, intent and effect of the Act is to force continued pregnancy and childbirth on all pregnant women in Guam and to impose obstacles upon even those women attempting to obtain abortions necessary to save their lives, by exacting criminal, medical, psychological and financial penalties upon women who seek abortions.

35. This Act will cause some pregnant women to suffer mutilation, death and health problems from illegal, dangerous abortions and other women to suffer increased medical and emotional problems from forced childbearing.

A. Definition of "Abortion" (Section 31.20)

36. Section 31.20 defines the term "abortion" in a manner that fails to make clear to the practicing physician when s/he will risk incurring liability by terminating a pregnancy. In particular, for example, the word "purposeful" is also unclear.

37. The definition of "abortion" is unduly narrow and, as such, does not comport with either generally accepted medical definitions and usage or with Guam statutory and common law definitions of the term.

38. The Act's definition of "abortion" may cause physicians to practice medicine in a manner contrary to their best medical judgment, for example, where, as required by section 3120, a second physician determines that there is no substantial

- 12 -

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 12 of 30

ARRIOLA, COWAN & BORDALLO, AGANA, GUAM 96910

risk that continuance of the pregnancy would endanger the life of the mother or would gravely impair her health or where the peer review committee established by the Act makes a determination contrary to the physician's best medical judgment.

39. The Act's requirement that two physicians determine, subject to review by a peer review committee, when an abortion is permissible under the Act will inevitably delay these abortions that must be done immediately. This will jeopardize women's health and lives.

40. The Act's requirement that two physicians determine when an abortion is permissible unduly burdens poor and low income women who can ill afford the services of a second physician.

41. The Act's definition of "abortion" may cause a physician to refuse to perform an abortion when, in the exercise of her best medical judgment and in the absence of the provision, she would otherwise have provided one, thereby interfering with the patient's ability to obtain optimal medical care.

B. Providing or Administering Drug to Cause Abortion (Section 31.21)

42. Because of its vague and ambiguous language, section 31.21 has the purpose and effect of discouraging physicians and facilities from providing medication for rape and incest victims or for women who request such medication in their best interest. Further, this prohibition inhibits the development of new, safe methods of abortion in the United States such as RU486, a drug which acts immediately after implantation.

- 13 -

This drug is being tested in parts of the United States but cannot yet be used in Guam.

C. Employing Means to Cause an Abortion (Section 31.21)

43. Prior to the Act, defendant medical providers supplied contraceptive devices known as the "intrauterine device" (IUD) to their woman patients. It is believed that an IUD sometimes acts to abort a fertilized and already implanted ovum. Therefore, the use of such a device would sometimes constitute an "abortion" as defined in section 31.20.

44. Because of the Act some of plaintiff physicians have stopped prescribing IUD's - thereby subjecting women in Guam to a higher risk of unwanted pregnancy.

D. Solicitation to Commit Abortion (Sections 31.22 and 31.23)

45. The Act provides that every person who solicits any woman to submit to any operation, or to the use of any means whatever, to cause an abortion is guilty of a misdemeanor. This constitutes an infringement on the physicians' and medical providers' duty to provide comprehensive medical care and treatment to women, particularly women who desire an abortion, and requires physicians, nurses, and counselors to violate medical, ethical and professional standards. Furthermore, denying women necessary medical advice and direction may cause doctors to face malpractice charges.

46. The solicitation portion of the Act extends to any person who gives specific abortion referral information; including lawyers, parents, relatives, friends, clergy, and librarians.

- 14 -

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 14 of 30

Upon information and belief, librarians have even asked whether they should take books off the shelves in Guam because of this law.

47. Sections 31.22 and 31.23 eliminate the right of women on Guam to obtain abortions and to receive information about abortion and inhibits plaintiff physicians, nurses and other health care providers and plaintiffs Cole and Konwith and others who desire to give information about abortions.

E.  Abortion Referendum - (Section 7 of the Act)

48. The Act provides that there shall be submitted at the island-wide general election to be held on November 6, 1990 the question of whether Public Law 20-134 shall be repealed. This constitutes an infringement on plaintiffs' rights of privacy, free speech and freedom of association, as well as their right of due process of law in that it subjects very basic, fundamental, constitutional rights to a vote by referendum.

49. The Act further provides that public funds shall be appropriated to carry out the referendum. This constitutes a gross, unnecessary waste of public funds on an Act that is patently unconstitutional.

First Cause of Action

50. Plaintiffs hereby incorporate by reference paragraphs 1 through 49 above.

51. The Act violates the right of privacy guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to

- 15 -

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 15 of 30

the United States Constitution and 48 U.S.C. § 1421b of the Organic Act in that it:

(a) imposes direct, and substantial burdens on the ability of women in Guam to exercise their right to choose to terminate a pregnancy; and

(b) imposes direct and substantial burdens on the right of a physician to practice medicine and to provide counseling, education and other services in accordance with the physician's best medical judgment.

## Second Cause of Action

52. Plaintiffs hereby incorporate by reference paragraphs 1 through 51 above.

53. The criminal and other penalty provisions of the Act fail to provide adequate notice as to the precise nature of conduct prohibited, thereby inhibiting the exercise of constitutionally-protected rights and inviting selective prosecution. They are, therefore, void for vagueness and they deprive plaintiffs and their patients of due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and §§ 1421b(e) and 1421b(u) of the Organic Act.

## Third Cause of Action

54. Plaintiffs hereby incorporate by reference paragraphs 1 through 53 above.

55. The Act denies the right of free speech and freedom of association guaranteed by the First and Fourteenth Amendments of the United States Constitution and by §§1421(a) and 1421b(u) of the Organic Act in that it penalizes plaintiffs' ability to

- 16 -

discuss or provide necessary information about abortions, and birth control including referrals.

### Fourth Cause of Action

56. Plaintiffs hereby incorporate by reference paragraphs 1 through 55 above.

57. The Act deprives women on Guam, members of the plaintiff class represented by physician plaintiffs Griley, Freeman and Dunlop of equal protection under the law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 1421b(n) and 1421b(u) of the Organic Act, and abridges equality of rights under the law in violation of the Guam Equal Rights Statute (Guam Code § 1104), because it imposes burdens upon women's reproductive choices and bodily integrity that are not imposed upon the reproductive choices of men.

### Fifth Cause of Action

58. Plaintiffs hereby incorporate by reference paragraphs 1 through 57 above.

59. The Act violates the guarantees of religious freedom of the First Amendment to the United States Constitution and Sections 1421b(a), 1421b(n) 1421b(p) and 1421b(u) of the Organic Act in that it seriously inhibits plaintiffs Cole's and Konwith's practice of religion.

60. The Act further violates the establishment clause of the First Amendment to the United States Constitution and sections 1421b(a), 1421b(u), 1421b(p) and 1421b(u) of the Organic Act in that it advances or endorses a particular religion.

- 17 -

ARRIOLA, COWAN & BORDALLO, AGANA, GUAM 96910

## Sixth Cause of Action

61. Plaintiffs hereby incorporate by reference paragraphs 1 through 60 above.

62. The Act violates guarantees of freedom from slavery in that it seeks to impose continued unwanted pregnancy on all women, robbing women of their bodily integrity and dignity and causing risks to their lives and health, in violation of the Thirteenth Amendment to the United States Constitution and of §§1421b(i) and 1421b(u) of the Organic Act.

## Seventh Cause of Action

63. Plaintiffs hereby incorporate by reference paragraphs 1 through 62 above.

64. The Act denies women protection against cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution and by §§1421b(h) and 1421b(u) because it criminalizes those women who seek to preserve their lives, health, dignity or beliefs by seeking an abortion.

## Eighth Cause of Action

65. Plaintiffs hereby incorporate by reference paragraphs 1 through 64 above.

66. By signing the Act into law and by issuing a public statement that he signed the law based on his personal beliefs, defendant Ada, under color of law as Governor of Guam, intended to enforce the Act and subjected plaintiffs to deprivation of their rights, privileges and immunities secured by the Constitution and laws, including the Organic Act, all as described in paragraphs 1 through 70. Defendant Ada's execution

- 18 -

and implementation of the Act subjects plaintiffs to threat of prosecution and ongoing injury resulting from the Act's chilling effect on plaintiffs' desire to exercise First Amendment rights.

67. Defendant Elizabeth Barrett-Anderson and the defendant class of prosecuting attorneys are empowered and required by law to enforce Public Law 20-134 and to subject plaintiffs to prosecution under the criminal provisions of the Act, depriving them of their rights, privileges and immunities secured by the Constitution and laws, including the Organic Act, all as described in paragraphs 1 through 70. Defendant Barrett-Anderson issued a memorandum to the Guam Chief of Police intending to enforce the Act, directing the manner of enforcing the Act and subjecting plaintiffs to threat of prosecution. A copy of the Attorney General's memorandum is attached hereto as Exhibit "B".

<u>Ninth Cause of Action</u>

68. Plaintiffs hereby incorporate by reference paragraphs 1 through 67 above.

69. The Act deprives women of liberty without due process of law in violation of the Fifth and Fourteenth Amendments and § 1421b(e) and § 1421b(u) of the Organic Act by denying them their right to choose to terminate their pregnancies without a meaningful opportunity for a full and adequate hearing.

<u>Irreparable Harm</u>

70. If the Act is allowed to continue in effect, plain-

- 19 -

tiffs and their women patients will continue to be subjected to immediate and irreparable injury for which no adequate remedy at law exists in the following respects:

(a) Plaintiffs will face criminal prosecution, license suspension or revocation and civil liability if they do not comply with the Act;

(b) Pregnant women will be discouraged, impeded and possibly prevented from obtaining the abortions they desire, and thus suffer physical, emotional, and other harm;

(c) Because abortion is medically safer than childbirth the maternal mortality rate (death from pregnancy) will rise for members of the class of women.

(d) Because many women will seek illegal abortions or attempt to self-abort members of plaintiff class will incur mutilation, sterility, infection and death.

(e) Because an abortion off Guam is expensive some women will delay while they seek to raise funds; this will increase health risks as later abortions are more dangerous.

(f) Plaintiffs are forced to censor their speech and literature about abortion.

(g) A gross, unnecessary waste of public funds will occur if a referendum on the Act is placed on the ballot for the next island-wide general election.

WHEREFORE, plaintiffs ask this Court:

A. To issue a temporary restraining order and preliminary injunction restraining defendants, their employees, agents and successors from enforcing and executing the Act;

- 20 -

B. To enter an order certifying this action as a class action for each class described herein and naming the respective parties as class representatives;

C. To enter judgment declaring defendants and the Act to be in violation of the United States Constitution, 42 U.S.C. § 1983, the Organic Act, and Guam Government Code § 1004 (the Equal Rights Statute) and permanently enjoining the enforcement of its provisions;

D. To grant plaintiffs reasonable attorney's fees under 42 U.S.C. § 1988 (Civil Rights Attorneys Fees Act), 28 U.S.C. § 2412 (Equal Access to Justice Act), and the equitable powers of the Court.

E. To grant such other and further relief as this Court shall find just and proper.

Dated this 26th day of June, 1990.

ARRIOLA, COWAN & BORDALLO
P. O. BOX X
AGANA, GUAM 96910
Counsel for Plaintiffs

AMERICAN CIVIL LIBERTIES UNION
REPRODUCTIVE FREEDOM PROJECT
NEW YORK, NEW YORK
(212) 944-9800
LYNN PALTROW
RACHAEL PINE
KATHRYN KOLBERT
SIMON HELLER

BY: _Anita P. Arriola_
ANITA P. ARRIOLA

- 21 -

## CERTIFICATE OF SERVICE

I hereby certify that one copy of the foregoing Second Amended Complaint was served upon counsel for the defendants as set forth below by hand-delivery this 26th day of June, 1990:

ELIZABETH BARRETT-ANDERSON, ESQ.
ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
SUITE 701, PACIFIC NEWS BUILDING
238 ARCHBISHOP F. FLORES STREET
AGANA, GUAM 96910

KATHERINE A. MARAMAN, ESQ.
LEGAL COUNSEL
OFFICE OF THE GOVERNOR
ADELUP, GUAM

GARY D. HULL, ESQ.
BAUMANN & HULL
SUITE 903, PACIFIC NEWS BLDG.
238 ARCHBISHOP F. FLORES ST.
AGANA, GUAM 96910

JEFFREY A. COOK, ESQ.
CUNLIFFE, COOK, MAHER & KEELER, P.C.
SUITE 200
210 ARCHBISHOP F.C. FLORES STREET
AGANA, GUAM 96910

MONESSA G. LUJAN, ESQ.
LUJAN & LUJAN
2ND FLOOR, J & R BLDG.
ROUTE 4, AGANA
POST OFFICE BOX 1889
AGANA, GUAM 96910

PATRICK M. WOLFF, ESQ.
ATTORNEY-AT-LAW
CASA DE FLORES
AGANA HEIGHTS, GUAM 96910

ANITA P. ARRIOLA

Doc.#3707C

- 22 -

ARRIOLA, COWAN & BORDALLO, AGANA, GUAM 96910

## CERTIFICATION OF PASSAGE OF AN ACT TO THE GOVERNOR

This is to certify that Substitute Bill No. 848 (COR), "AN ACT TO REPEAL AND REENACT §31.20 OF TITLE 9, GUAM CODE ANNOTATED, TO REPEAL §§31.21 AND 31.22 THEREOF, TO ADD §31.23 THERETO, TO REPEAL SUBSECTION 14 OF SECTION 3107 OF TITLE 10, GUAM CODE ANNOTATED, RELATIVE TO ABORTIONS, AND TO CONDUCT A REFERENDUM THEREON," was on the 8th day of March, 1990, duly and regularly passed.

JOE T. SAN AGUSTIN
Speaker

Attested:

PILAR C. LUJAN
Senator and Legislative Secretary

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This Act was received by the Governor this _8_ day of _MAR_, 1990, at _6:22_ o'clock _P._m.

Assistant Staff Officer
Governor's Office

APPROVED:

JOSEPH F. ADA
Governor of Guam

Date: ___March 19, 1990___

Public Law No. ___20-134___

EXHIBIT "A"

impair the health of the mother, any such termination of pregnancy to be subsequently reviewed by a peer review committee designated by the Guam Medical Licensure Board, and in either case such an operation is performed by a physician licensed to practice medicine in Guam or by a physician practicing medicine in the employ of the government of the United States, in an adequately equipped medical clinic or in a hospital approved or operated by the government of the United States or of Guam."

Section 3. §31.21 of Title 9, Guam Code Annotated, is repealed and reenacted to read:

"§31.21. Providing or administering drug or employing means to cause an abortion. Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to cause an abortion of such woman as defined in §31.20 of this Title is guilty of a third degree felony. In addition, if such person is a licensed physician, the Guam Medical Licensure Board shall take appropriate disciplinary action."

Section 4. §31.22 of Title 9, Guam Code Annotated, is repealed and reenacted to read:

"§31.22. Soliciting and taking drug or submitting to an attempt to cause an abortion. Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever with intent thereby to cause an abortion as defined in §31.20 of this Title is guilty of a misdemeanor."

Section 5. A new §31.23 is added to Title 9, Guam Code Annotated, to read:

"§31.23. Soliciting to submit to operation, etc., to cause an abortion. Every person who solicits any woman to submit to any operation, or to the use of any means whatever, to cause an abortion as defined in §31.20 of this Title is guilty of a misdemeanor."

2

Section 6. Subsection 14 of Section 3107, Title 10, Guam Code Annotated, is repealed.

Section 7. Abortion referendum. (a) There shall be submitted at the island-wide general election to be held on November 6, 1990, the following question for determination by the qualified voters of Guam, the question to appear on the ballot in English and Chamorro:

"Shall that public law derived from Bill 848, Twentieth Guam Legislature (P.L. 20-__ ), which outlawed abortion except in the cases of pregnancies threatening the life of the mother be repealed?

In the event a majority of those voting vote "Yes", such public law shall be repealed in its entirety as of December 1, 1990.

(b) There is hereby authorized to be appropriated to the Election Commission (the "Commission') sufficient funds to carry out the referendum described in this Section 7, including but not limited to the cost of printing the ballot and tabulating the results. In preparing the ballot, the Commission shall include in the question the number of the relevant public law.

3



# GOVERNMENT OF GUAM
## AGANA, GUAM 96910

March 21, 1990

MEMORANDUM (Informational)            Ref: AG 90-0300

TO:        Chief of Police

FROM:      Attorney General

SUBJECT:   P.L. 20-134


This office has carefully examined Public Law 20-134 (Bill No. 848 COR) in light of controlling United States Supreme Court decisions, and while we believe the law is unconstitutional, that determination ultimately must be made by the courts. On March 20, this office filed in Superior Court its first criminal complaint under the new law in order to quickly bring the constitutional questions to issue in a judicial forum. Although we will strive for an early resolution of these issues, the court proceedings can be expected to take awhile. In the meantime, we are issuing this memorandum for your information and guidance.

At the outset it is important to give you a brief overview of the law. The law as signed by the Governor bans all abortions unless (1) it is necessary to terminate an ectopic pregnancy or (2) two physicians determine that "there is a substantial risk that continuance of the pregnancy would endanger the life of the mother or would gravely impair the health of the mother." It further provides that either determination must be reviewed by a peer review committee designated by the Guam Medical Licensure Board. Likewise, sections 4 and 5 regarding solicitation would prevent a medical professional or any other person from recommending to a woman that she seek an abortion in a location other than Guam by making such recommendation a crime. Based on the current position of the United States Supreme Court as stated in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 2d 147 (1973) regarding a woman's right to privacy and on the right to freedom of speech as guaranteed by the First Amendment to the United States Constitution Public Law 20-134 is unconstitutional and may not be enforced by any branch of the government of Guam.

Since the United States Supreme Court handed down the long awaited but controversial decision in Roe, local jurisdictions have struggled with the issue of how much, if any, local regulation of abortions is permissible. In Roe the Court concluded that the "right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and

EXHIBIT "B"

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 26 of 30

restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." 93 S.Ct. at 727.

In attempting to determine the level of regulation which is permissible the Court divided a woman's pregnancy into three stages or trimesters and attached differing levels of state interest to each. With some exceptions noted below, the Court held that the state's interest does not become compelling until "approximately the end of the first trimester" of pregnancy. Until that time, the pregnant woman, in consultation with her physician, must be allowed to make the decision to have an abortion "free from interference by the state." From the end of the first trimester, the state "may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health." And, during the third trimester may forbid abortions altogether. See, Roe v. Wade at 731-732.

The Court has gone to great lengths to distinguish between the right of a state to determine its own policy encouraging childbirth and the prohibition of interference with a woman's decision to elect abortion. In Maher v. Roe, 97 S.Ct. 2376 (1977), the Court emphasized this right by making a distinction "between direct state interference with a protected activity and state encouragement of an alternative activity consonant with state policy." In approving Connecticut's decision to not fund abortions that were not determined to be medically necessary the Court noted that "[c]onstitutional concerns are greatest when the state attempts to impose its will by force of law; the State's power to encourage actions deemed to be in the public interest is necessarily far broader." Id at 2383.

The Supreme Court has invalidated numerous state laws restricting a woman's right to privacy in a decision to seek an abortion. The requirement that two physicians who practice independently of each other concur in the need for the abortion has been expressly addressed in Doe v. Bolton, 93 S.Ct. 739 (1973) the companion case to Roe. There the Court pointed out that there was no other voluntary medical or surgical procedure which required such confirmation. The Court wrote "If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment. If he fails in this, professional censure and deprivation of his license are available. Required acquiesence by co-practioners has no rational connection with a patient's needs and unduly infringes on the physician's right to practice." In City of Akron v. Akron Center for Reproductive Health, 103 S.Ct. 2481 (1983), the Supreme Court struck down

statutes requiring that abortions after 12 weeks be performed in a hospital. Affirming its earlier decision in <u>Roe</u> that the State has a legitimate interest in establishing, for second-trimester abortions, "standards for licensing all facilities where abortions may be performed" the Court continued finding that "the State must show more than was shown in <u>Doe</u>] in order to prove that only the full resources of a licensed hospital, rather than those of some other appropriately licensed institution, satisfy these health interests." Id.

In <u>Belloti v. Baird</u>, 99 S.Ct. 3035 (1979) the Court addressed the issue of whether the State may prohibit a physician from performing an abortion on a minor pregnant woman unless the physician obtained the informed written consent of one of her parents or her legal guardian or unless the minor obtained an order from a court having jurisdiction over her that the abortion be performed. Citing its decision in <u>Planned Parenthood of Central Missouri v. Danforth</u>, 96 S.Ct. 2831 (1976) that "the State may not impose a blanket provision...requiring the consent of a parent or person in local parentis as a condition for abortion of an unmarried minor during the first 12 weeks of her pregnancy" Id., at 2843. In <u>Danforth</u> the Court held that the prior written consent of the spouse of a woman seeking abortion may not be required as that would be the delegation to another person of that which the State itself could not regulate. In <u>Akron</u> the Supreme Court struck down an ordinance which required that in order for a woman to give the informed consent permitted by <u>Danforth</u> that she be "informed by her attending physician of the status of her pregnancy, the development of her fetus, the date of possible viability, the physical and emotional complications that may result from an abortion, and the availability of agencies to provide her with assistance and information with respect to birth control, adoption and childbirth." 103 S.C. at 2499. The Court, while holding that the state "may require that a physician make certain that his patient understands the physical and emotional implications of having an abortion," disapproved of the particular ordinance on the grounds that it "reasonably has placed obstacles in the path of the doctor upon whom [the woman] is entitled to rely for advice in connection with her decision." Id., at 2501.

Likewise, the <u>Akron</u> Court ruled unconstitutional a requirement that there be a mandatory 24-hour waiting period after the woman signs the consent form before the physician may perform the abortion. The Court failed to find "that any legitimate state interest is furthered by an arbitrary and inflexible waiting period."

Case 1:90-cv-00013    Document 154    Filed 06/26/90    Page 28 of 30

The thrust of these decisions is that the Supreme Court is currently of the position that while some degree of regulation is permissible in the area of abortion, depending upon the nature of the regulation and the state of pregnancy, the basic right to decide whether or not to elect an abortion or not is that of the woman and her physician. This right is based upon a woman's constitutional right of privacy and is not to be abridged absent a compelling state interest or a regulation which does not unduly interfere with the pregnant woman's freedom of choice. Roe set forth the guidelines which must be followed by courts and legislatures in evaluating statutes, rules and regulations.

The recent opinion by the Supreme Court in Webster v. Reproductive Services, 109 U.S. 3040 (1989) has not disturbed the basic premise of Roe. In Webster the Court merely allowed states to determine whether abortions should be performed in public facilities, at public expense. But the Court did nothing in that case by way of overruling Roe. Therefore a state cannot constitutionally interfere with a woman's right of personal privacy to have an abortion whatever the cause of her pregnancy. Public Law 20-134 takes away from a woman this right to decide (in consultation with her physician) whether or not to seek an abortion.

The cases discussed above, while not exhaustive, will give you an idea of the constitutional tests that P.L. 20-134 faces in the days ahead and why we believe that the new law presents difficult and sensitive law enforcement problems. Notwithstanding the doubtful future of P.L. 20-134, until it is otherwise invalidated by the courts, government agencies, particularly law enforcement agencies have a duty, we believe, to conduct themselves in a manner that, at least, does not imply that the law can be violated without fear of punishment. On the other hand, we see little reason to commit scarce and costly resources to law enforcement activities while the constitutional viability of the new law remains in doubt. Admittedly, this is a fine and delicate line to be tread. With these considerations in mind, our advice to you at this time, pending resolution of the underlying questions we have raised, is as follows:

1) Refer any questions from members of the public about the law to this office the Attorney General (Main office).

2) Refer any complaints about alleged violations of the law to our Prosecution Division.

3) Make no arrests for alleged violations of the law without express prior approval of the Prosecution Division.

We will be advising you more fully as the situation requires. Please let me know if you need further information or assistance.

ELIZABETH BARRETT-ANDERSON

cc: Governor
    Speaker, 20th Guam Legislature
    Director, Department of Education
    Director, Department of Public Health & Social Services
    Chief, Guam Fire Department
    Administrator, Guam Memorial Hospital