

FILED
Office of the Clerk
DISTRICT COURT OF GUAM
AGANA, GUAM

AUG 2 3 1990
224

MARY L. MICHELS
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

TERRITORY OF GUAM

GUAM SOCIETY OF OBSTETRICIANS )      Civil Case No. 90-00013
AND GYNECOLOGISTS; GUAM NURSES )
ASSOCIATION; THE REVEREND MILTON )
H. COLE, JR.; LAURIE KONWITH; )
EDMUND A. GRILEY, M.D.; JOHN )
DUNLOP, M.D., on behalf of )
themselves and all others )
similarly situated, and all )
their women patients,* )
)
          Plaintiffs, )
)
                 v. )      DECISION AND ORDER RE
)      PERMANENT INJUNCTION AND
)      OTHER MOTIONS
JOSEPH F. ADA, in his individual )
and official capacities; DR. )
LETICIA ESPALDON; GEORGE B. )
PALICAN; ELIZABETH BARRETT- )
ANDERSON; GLORIA B. NELSON, )
THOMAS J.B. CALVO, FLORENCIO T. )
RAMIREZ, LEONILA L.G. HERRERO )
and MICHAEL PHILLIPS, as the )
Board of Directors of the Guam )
Election Commission, in their )
official capacities, together )
with all others similarly )
situated, )
)
          Defendants )
)
_____)

_____
* Original lead plaintiff Maria Doe was dismissed as a party
after motion and an order of the Court entered June 26, 1990.

Attorney for Plaintiffs:            Anita Arriola, Esq.
                                    ARRIOLA, COWAN & BORDALLO
                                    P.O. Box X
                                    Agana, Guam  96910

Attorneys for Governor Ada:         Katherine Maraman, Esq.
                                    Monessa Lujan, Esq.
                                    Governor's Office
                                    P.O. Box 2950
                                    Agana, Guam  96910

Attorney for Attorney General       Maria Fitzpatrick, Esq.
        Barrett-Anderson:           Assistant Attorney General
                                    Attorney General's Office
                                    PDN Bldg. - 7th Floor
                                    238 Archbishop Flores St.
                                    Agana, Guam  96910

Attorney for Dr. Espaldon:          Patrick Wolff, Esq.
                                    P.O. Box CE
                                    Agana, Guam  96910

THIS MATTER came before the Court on August 7, 1990, for hearing of the following motions:  Plaintiffs' motion for summary judgment and permanent injunction; plaintiffs' motion for summary judgment based on 42 U.S.C. §1983; defendant Governor Ada's motion to dismiss; defendant Governor Ada's motion for partial summary judgment; and, defendant Attorney General Barrett-Anderson's motion to dismiss.

2

THE COURT, having reviewed the voluminous filings and having fully considered the arguments made by the parties in their respective memoranda of law and at oral argument, finds that there are no genuine issues of material fact which would preclude summary judgment and that such disposition is, therefore, appropriate.

## Statement of Undisputed Facts

On July 10, 1989, Senator Elizabeth P. Arriola introduced Bill 848 before the Guam Legislature. Bill 848 provided as follows:

> AN ACT TO REPEAL AND REENACT §31.20 OF TITLE 9, GUAM CODE ANNOTATED, TO REPEAL §§31.21 AND 31.22 THEREOF, TO ADD 31.23 THERETO, TO REPEAL SUBSECTION 14 OF SECTION 3107 OF TITLE 10, GUAM CODE ANNOTATED, RELATIVE TO ABORTIONS, AND TO CONDUCT A REFERENDUM THEREON.
>
> BE IT ENACTED BY THE PEOPLE OF THE TERRITORY OF GUAM:
>
> Section 1. Legislative findings. The Legislature finds that for purposes of this Act life of every human being begins at conception, and that unborn children have protectible interests in life, health, and well-being. The purpose of this Act is to protect the unborn children of Guam. As used in this declaration of findings the term "unborn children" includes any and all unborn offspring of human beings from the moment of conception until birth at every stage of biological development.
> Section 2. §31.20 of Title 9, Guam Code Annotated, is repealed and reenacted to read:
> "§31.20. Abortion: defined. "Abortion" means the purposeful termination of a human pregnancy

3

after implantation of a fertilized ovum by any person including the pregnant woman herself with an intention other than to produce a live birth or to remove a dead unborn fetus. "Abortion" does not mean the medical intervention in (i) ectopic pregnancy, or (ii) in a pregnancy at any time after the commencement of pregnancy if two (2) physicians who practice independently of each other reasonably determine using all available means that there is a substantial risk that continuance of the pregnancy would endanger the life of the mother or would gravely impair the health of the mother, any such termination of pregnancy to be subsequently reviewed by a peer review committee designated by the Guam Medical Licensure Board, and in either case such an operation is performed by a physician licensed to practice medicine in Guam or by a physician practicing medicine in the employ of the government of the United States, in an adequately equipped medical clinic or in a hospital approved or operated by the government of the United States or of Guam."

Section 3. §31.21 of Title 9, Guam Code Annotated, is repealed and reenacted to read:
"§31.21. Providing or administering drug or employing means to cause an abortion. Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to cause an abortion of such woman as defined in §31.20 of this Title is guilty of a third degree felony. In addition, if such person is a licensed physician, the Guam Medical Licensure Board shall take appropriate disciplinary action."

Section 4. §31.22 of Title 9, Guam Code Annotated, is repealed and reenacted to read:
"§31.22. Soliciting and taking drug or submitting to an attempt to cause an abortion. Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever with intent thereby to cause an abortion as defined in §31.20 of this Title is guilty of a misdemeanor."

4

Section 5. A new §31.23 is added to Title 9, Guam Code Annotated, to read:
"§31.23. Soliciting to submit to operation, etc., to cause an abortion. Every person who solicits any woman to submit to any operation, or to the use of any means whatever, to cause an abortion as defined in §31.20 of this Title is guilty of a misdemeanor."

Section 6. Subsection 14 of Section 3107, Title 10, Guam Code Annotated, is repealed.

Section 7. Abortion referendum. (a) There shall be submitted to an island-wide general election to be held on November 6, 1990, the following question for determination by the qualified voters of Guam, the question to appear on the ballot in English and Chamorro: "Shall that public law derived from Bill 848, Twentieth Guam Legislature (P.L. 20-134), which outlawed abortion except in the cases of pregnancies threatening the life of the mother be repealed?"

In the event a majority of those voting vote "Yes", such public law shall be repealed in its entirety as of December 1, 1990.

(b) There is hereby authorized to be appropriated to the Election Commission (the "Commission") sufficient funds to carry out the referendum described in this Section 7, including but not limited to the cost of printing the ballot and tabulating the results. In preparing the ballot, the Commission shall include in the question the number of the relevant public law.

During later discussion of the Bill, the Senator justified the near-complete ban on abortions on Guam on the ground that

Guam is a Christian community. That no matter which way you're going to say "this is not religion, this is not so and so," I beg to differ, Mr. Speaker. It's a Christian community. We decide what we're

5

going to have here on Guam.[1]

Transcript of Legislative Session, March 8, 1990.

Senator Arriola's legal counsel had advised her that the Bill as introduced would probably be struck down because "[j]udges are bound by Supreme Court decisions because [the decisions are] binding precedent, and that more than likely a judge would probably find that this bill was not in keeping with Roe v. Wade." Deposition of Attorney June Mair, May 10, 1990, at p.23.

On September 16, 1989, the Guam Legislature's Committees on Health, Welfare and Ecology and the Judiciary and Criminal

---

[1] This passage calls to mind the 1856 admonition of Chief Justice Black of the Commonwealth of Pennsylvania, as quoted by Justice Brennan in School District of Abington Township (Pa.) v. Schempp, 374 U.S. 203, 304, 83 S.Ct. 1560, 1614-1615 (1963):

> The manifest object of the men who framed the institutions of this country was to have a State without religion , and a Church without politics- -- that is to say, they meant that one should never be used as an engine for any purpose of the other, and that no man's rights in one should be tested by his opinions about the other. As the Church takes no note of men's political differences, so the State looks with equal eye on all the modes of religious faith.... Our fathers seem to have been perfectly sincere in their belief that the members of the Church would be more patriotic, and the citizens of the State more religious, by keeping their respective functions entirely separate. "Essay of Religious Liberty," in Black, ed., Essays and Speeches of Jeremiah S. Black (1886), 53. (Emphasis in the original)

Schempp is a noteworthy primer on First Amendment religious freedom.

6

Justice held a joint hearing on two abortion bills, Senator Arriola's and another introduced by two other senators. The latter bill would have allowed abortions under somewhat broader circumstances. Of the people who testified at the hearing, the "overwhelming majority... supported the bill on grounds of expressed religious belief or orientation." Committee Report on Bill 848, at pp. 3-4.

On February 26, 1990, Guam's Attorney General, Elizabeth Barrett-Anderson, filed twelve pages of written testimony with the Committee on Judiciary and Criminal Justice. The Attorney General gave as the legal opinion of her office that both bills were "violative of a woman's constitutional right of privacy as enunciated by the United States Supreme Court in Roe v. Wade." The Attorney General noted that a "state cannot interfere with a woman's right of personal privacy to decide to have an abortion whatever the cause of her pregnancy. The state may regulate such a decision, but it cannot deprive a woman of such a choice." (Emphasis in original) Because both bills effectively proscribed abortion, the Attorney General gave as her legal opinion that "both bills would be held unconstitutional." Attorney General's Opinion, pp. 1-4.

After minor amendments, including the addition of a legislative "finding" that "life begins at conception," the Legislature unanimously passed the Bill 848 on March 8, 1990.

7

On March 19, 1990, defendant Governor Joseph F. Ada signed the bill into law as Public Law 20-134. In his March 23, 1990, transmittal letter to the Speaker, Governor Ada noted that his "pro-life" stance was well-known, but that Bill 848 was "even more severe than my views on the subject are." Despite his expressed misgivings about almost every substantive part of the bill, and after, in his own words, prayer and much soul-searching, the Governor

> came to the realization that in terms of my personal beliefs and my personal actions, the question for me really boils down to one simple point. Do I consider a foetus a human being? In my heart, I believe a foetus is a human being. And having such belief, how could I accord a foetus any less respect or dignity than I would any other human being? Having come to this conclusion, my choice is fairly simple. Do I act in accordance with my firmly held personal beliefs, or do I not?

> *          *          *

> Believing as I do, I personally can see no honorable course for me to take, no action that I could take and still be true to my conscience other than signing this bill. This is a personal decision, and one that I must make if I am to be true to my own beliefs.

The law took effect immediately and abortions were effectively banned in the Territory of Guam.

On March 20, 1990, Janet Benshoof, in a luncheon speech before the Guam Press Club, after acknowledging that Guam's new law prohibited the "soliciting" of abortions, "informed" the audience that abortions could be obtained in Hawaii and gave a telephone

8

number in that state for further information. She was promptly arrested under the solicitation provisions of the new law. (These charges subsequently were dismissed, but without prejudice.)

On March 23, 1990, plaintiffs filed this lawsuit, challenging the constitutionality of the Act. Plaintiffs alleged that the law violates the First, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution, the Organic Act of Guam, and 42 U.S.C. §1983. The Court issued a temporary restraining order the same day. After a hearing on March 26, 1990, the temporary restraining order was continued in force until further order of the Court.

### Decision

#### Summary Judgment and Permanent Injunction

After the emotionalism and stridency of the opposing views are stripped away, the strict legal issue before the Court is not one difficult of resolution: Is <u>Roe v. Wade</u>[2] the law in the Territory of Guam? Because the Court finds that it is, plaintiffs' motion for summary judgment is GRANTED and, for the reasons stated hereinbelow, defendants Governor Ada, Attorney General Barrett-Anderson, and Dr. Espaldon[3] are permanently enjoined from enforcing any of the provisions of Public Law 20-134.

In 1968, the United States Congress amended the Organic Act of Guam.[4] Among the 1968 changes was one amending Guam's Bill of Rights to add an entire section:

> (u)  The following provisions of and amendments

---

[2]  410 U.S. 155, 93 S.Ct. 705, <u>reh</u>. <u>denied</u>, 410 U.S. 959, 93 S.Ct. 1409 (1973).

[3]  Dr. Leticia Espaldon is the Director of the Department of Public Health and Social Services for the Territory of Guam.

Defendant George B. Palican is the Administrator of Guam Memorial Hospital. By stipulation filed June 25, 1990, he agreed "to abide by all injunctions and court orders and... be bound by the final judgment or decree in this action." The Election Commission entered into a like stipulation.

[4]  Title 48 U.S.C. §1421, <u>et</u> <u>seq</u>. The amendments were contained in the Guam Elective Governor Act, Pub.L. 90-497, §10, 82 Stat. 842 (1968).

10

> to the Constitution of the United States are hereby extended to Guam to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States:  article I, section 9, clauses 2 and 3; article IV, section 1 and section 2, clause 1; the first to ninth amendments inclusive; the thirteenth amendment; the second sentence of section 1 of the fourteenth amendment[5]; and the fifteenth and nineteenth amendments.
>
> All laws enacted by Congress with respect to Guam and all laws enacted by the territorial legislature of Guam which are inconsistent with the provisions of this subsection are repealed to the extent of such inconsistency.  (Emphasis added)

48 U.S.C. §1421b(u).

Governor Ada insists that §1421b(u) does not mean what it says.  His position of record, in his memoranda and at oral argument, is that post-1968 United States Supreme Court decisions in the area of substantive due process rights and equal protection have no force and effect in the Territory of Guam. This unusual proposition is based upon his belief that since the United States Congress, when it amended the Organic Act in 1968,

---

[5]  The second sentence of section 1 of the Fourteenth Amendment to the United States Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

11

could not have foreseen the 1973 Supreme Court decision in Roe
v. Wade, Congress could not have intended it to apply to the
Territory of Guam.  To quote from defendant Governor's memorandum
of July 13, 1990:

> Under Ngiraingas v. Sanchez, [110 S.Ct. 1737
> (1990)], in determining whether Congress extended
> the privacy/abortion right under the First,
> Third, Fourth, Fifth, Ninth or Fourteenth
> Amendments, this court must seek indicia of
> congressional intent at the time 48 U.S.C.
> Section 1421b(u) was enacted in 1968. There is,
> however, no clear signal given from the
> legislative history of Section 1421b(u) that
> Congress intended to extend the privacy/abortion
> right to Guam. As a matter of law, therefore,
> the First, Third, Fourth, Fifth and Ninth and
> Fourteenth Amendments, to the extent that they
> encompass a privacy/abortion right, do not have
> the same effect and application that they have
> in the states. Roe v. Wade... does not apply to
> Guam and Guam may regulate abortion as in Public
> Law 20-134.

According to Governor Ada, Guam was "frozen in time" in 1968
unless it can be shown that Congress gave a "clear signal" that
post-1968 Supreme Court decisions involving any of the rights
§1421b(u) were to have force and effect in the Territory.  He
sees no such "signal."[6]

Governor Ada's precise argument finds no known precedent in
American jurisprudential history.  His reliance on Ngiraingas to
support the "frozen in time" theory of the applicability of

---

[6]    This appears to be the first time since 1968 that
Guam's government has forwarded this interpretation of subsection
(u).  None of the defendants supplied the Court with any case
citations in support of this singular reading of the Organic Act.

12

certain constitutional rights to the Territory of Guam is erroneous. It is sufficient here to note just one flaw in defendant's reasoning. Section 1983 was enacted by Congress more than a century ago in response to the activities of the Ku Klux Klan. It was not unreasonable in <u>Ngiraingas</u>, then, for the Supreme Court to look at §1983's legislative history to determine if a territory such as Guam was intended to fall within its ambit. However, the Organic Act of Guam is a federal statute concerning <u>only</u> Guam. When it was amended in 1968, the amendments applied <u>only</u> to Guam. It is inconceivable to the Court that Congress would add subsection (u) to §1421b and yet simultaneously fix it immutably in time in 1968 so that it would not truly "have the same force and effect" as in the United States, as provided.

This Court cannot imagine a clearer "signal" from Congress than that, by enacting subsection (u) in 1968, it felt an obligation to insure that the people of Guam would enjoy more of the constitutional protections afforded other citizens of the United States. Inarguably, it seems to this Court, the express words of the statute demonstrate that Congress intended that the people of the Territory of Guam would from 1968 onward be afforded the full extent of the constitutional protections added to Guam's Bill of Rights, as those rights are found in the United States Constitution and as they are construed and articulated by

13

the United States Supreme Court. It follows, then, when interpreting subsection (u), that since the decisions of the United States Supreme Court, including Roe v. Wade, are the law of the land, they apply with equal force and effect to the Territory of Guam. Having determined that Roe v. Wade applies in Guam, the Court finds that Public Law 20-134 is unconstitutional. For the reasons given below, the entire law must fall.

This Court need not address the legislative finding of Section 1 that "life begins at conception." It is sufficient to note that Guam cannot "justify" an abortion regulation otherwise invalid under Roe v. Wade on the ground that it embodies Guam's view of when life begins.

Next, as the Roe Court noted, the United States Supreme Court has recognized since at least 1891 that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution. The roots of this right of privacy are found in the First Amendment, the Fourth and Fifth Amendments, the penumbrae of the Bill of Rights, the Ninth Amendment, and the concept of liberty guaranteed by the first section of the Fourteenth Amendment. Roe v. Wade, 410 U.S. at 152-153. The right of privacy has some extension to marriage, procreation, contraception, family relationships, child rearing and education, and the qualified right to obtain an abortion.

14

_Id._

However, as _Roe_ noted, the right of personal privacy, in the context of a woman's decision regarding abortion, is not unqualified and must be weighed against important state interests in regulation. _Id._, at 155. Under _Roe_, Guam may regulate abortions only to serve two compelling interests: The government's paramount interest throughout the pregnancy in the woman's health, _Id._ at 154, and the government's interest after viability in protecting the potentiality of human life, _Id._, at 162. During approximately the first trimester of pregnancy, neither of these interests is deemed "compelling" for purposes of constitutional analysis and the government may not restrict a woman's right to choose an abortion. _Id._, at 164. During approximately the second trimester, the government may only regulate the abortion procedure in ways that are "reasonably related to maternal health." _Id._ After viability [of the fetus], the government may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother. _Id._, at 165. Therefore, any law purporting to regulate abortion must take into account these different interests, and protect both the rights of the individual woman and the interests of the state.

15

Because Sections 2[7], 3[8], 4[9], and 5 (Title 9 G.C.A. §§ 31.20,

---

[7] The "two-physician" and "peer review" provisions fail. See, Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, reh. denied, 410 U.S. 959, 93 S.Ct. 1410 (1973).

The "two-physician" requirement fails because the "required acquiescence by co-practitioners has no rational connection with a patient's needs and unduly infringes on a physician's right to practice." (Emphasis added) Id., at 199. Also, the section contains no emergency exception to the two-physician requirement, as required by the Supreme Court in Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 770-771 (1986).

The "peer review committee" fails because it is "unduly restrictive of the patient's rights that... have already been medically delineated and substantiated by her personal physician." Id., at 197-198. As well, the additional time necessitated by this procedure may implicate the Supreme Court's decision in Akron v. Akron Center for Reproductive Health, 462 U.S. 416 (1983), which invalidated a 24-hour waiting requirement.

Finally, some of the phrases contained in this section--- such as "practice independently of each other," "reasonably determine using all available means," "substantial risk," "gravely impair," and "adequately equipped medical clinic"--- lacking as they do any precise definition, would undoubtedly raise due process questions since "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391 (1926).

[8] Section 3 directly contravenes the law as established by Roe v. Wade.

[9] Sections 4 and 5 also violate the First Amendment since they attempt to prohibit freedom of speech. "If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable. [Citations omitted]." Texas v. Johnson, ___ U.S. ___, 109 S.Ct. 2533, 2544 (1989).

These two sections are constitutionally infirm insofar as they would make criminal any discussion between a woman and her doctor concerning the need for, and access to, an abortion. The state has no compelling interest in intruding in this most private area

16

31.21, 31.22, and 31.23, respectively) of the Guam law fail to make distinctions based on the stage of the pregnancy, and because the law does not recognize, as it must, any of the other constitutionally-protected interests involved, it violates the Due Process Clause of the Fourteenth Amendment[10], as it applies to Guam via §1421b(u).[11]

---

of consultation between a woman and her physician. See, e.g., Massachusetts v. Secretary of Health and Human Services, 899 F.2d 53 (1st Cir. 1990).

These sections are also invalid on their face insofar as they purport to prohibit more general speech concerning abortion and its availability. See, Thornburgh, supra, 476 U.S. at 760-764; Akron Center for Reproductive Health, supra, 462 U.S. at 429-430, 443-445.

[10] To paraphrase Roe, "Indeed, it is difficult to imagine a more complete abridgement of a constitutional freedom than that worked by the inflexible criminal statute now in force in [Guam]." Roe v. Wade, 410 U.S. at 171.

[11] In light of the Court's decision, Section 7 of the Act, providing for a referendum, is rendered moot. The Election Commission was named as a defendant since it would have been charged with responsibility for conducting the referendum. The Commission has remained neutral throughout these proceedings.

17

## 42 U.S.C. §1983 Claims

Because of the importance of the issue and the seemingly unsettled state of the law as it applies to Guam, the Court believes it is necessary and proper to address plaintiffs' §1983 claims.

The Supreme Court has held that "neither the Territory of Guam nor its officers acting in their official capacities are 'persons' under §1983." <u>Ngiraingas v. Sanchez</u>, ____ U.S. ____, 110 S.Ct. 1737, 1743 (1990). The Supreme Court has also said, however, that "a state official acting in his or her official capacity, when sued for injunctive relief, <u>would</u> be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the state'." (Emphasis added) <u>Will v. Michigan Dept. of State Police</u>, ___ U.S. ___, 109 S.Ct. 2304, 2311, N. 10 (1989), <u>quoting</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 3106, n. 14 (1985). The theory supporting this view was expressed in <u>Ex parte Young</u>, 209 U.S. 123, 159-160, 28 S.Ct. 441, 453-454 (1908):

> The general discretion regarding the enforcement of the laws when and as he deems appropriate is not interfered with by an injunction which restrains the state officer from taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant. In such case no affirmative action of any nature is directed, and the officer is simply prohibited from doing an act which he had no legal right to do. An injunction to prevent him from doing that which he has no legal right to do is not an

18

interference with the discretion of an officer.

\*          \*          \*

> The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional.

Plaintiffs thus make two arguments for the continuing vitality and utility of §1983 in the Territory of Guam. First, they argue that Ngiraingas left open the question of the availability under §1983 of injunctive relief against the Territory of Guam and its officers acting in their official capacities. Second, they maintain that §1983 injunctive relief is available against Governor Ada in his individual capacity. The Court will consider each claim in turn.[12]

The Supreme Court's decision in Ngiraingas did not address, and thus cannot be said to have changed, the rule that prospective injunctive relief is available against an official acting in his or her official capacity. See, Will and Kentucky

---

[12] The Court is aware, as surely are the parties, that a finding of any relief predicated upon §1983 will entitle plaintiffs to apply for an award of attorney fees under 42 U.S.C. §1988. Section 1988 provides in part that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

v. Graham, supra. However, because both the Supreme Court and the Ninth Circuit, in their respective Ngiraingas decisions, found on the facts of that case that Guam was not a "person" for purposes of §1983, neither court confronted the issue of whether Guam, like a state, enjoys sovereign immunity under the Eleventh Amendment or the extent of the immunity afforded by 42 U.S.C. §1421a[13]. Ngiraingas v. Sanchez, 110 S.Ct. at 1739, n. 2, and 1743, n. 12.

The Court believes that Guam does not on the facts before it enjoy immunity from injunctive relief, whether based on the Eleventh Amendment or §1421a. "In an injunction grounded on federal law, the State's [Eleventh Amendment] immunity can be overcome by naming state officials as defendants." (Emphasis in original) Kentucky v. Graham, 473 U.S. at 170, n. 18, citing Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900 (1984), and Ex parte Young, supra. Similarly, and relying again on the reasoning of Ex parte Young and its progeny, the Court finds that §1983 provides an independent ground to permanently enjoin defendants Governor Ada, Attorney General Barrett-Anderson, and Dr. Espaldon from enforcing any of the

---

[13] Section 1421a provides in part that "The government of Guam... shall have power to sue by such name, and, with the consent of the legislature evidenced by enacted law, may be sued upon any contract entered into with respect to, or any tort committed incident to, the exercise by the government of Guam of any of its lawful powers."

20

provisions of Public Law 20-134.[14]

The remaining issue involves §1983 injunctive relief against Governor Ada in his individual capacity. Plaintiffs argue that such relief is available because the Supreme Court noted without objection that portion of the Ninth Circuit's Ngiraingas opinion which held that the police officers there still could be sued under §1983 in their individual capacities, to the extent they were not entitled to immunity. Ngiraingas v. Sanchez, 110 S.Ct.

---

[14] The Court does not today, of course, address the issue of attorney fees. The §1988 provision for an award of attorney fees and costs was enacted to encourage enforcement of civil rights provisions by compensating those who bring meritorious actions. The possibility of an award of fees and costs provides an important inducement for attorneys to undertake the vindication of constitutional rights in unpopular causes. Without such a provision, the sheer economic hardship placed upon practitioners who undertake such representation would effectively prohibit them from entering the fray.

Left for future consideration is the effect of the Ninth Circuit's reasoning in its Ngiraingas decision that a §1983-based money judgment against defendants in their official capacities was prohibited because it would have affected the public treasury and, thus, would essentially have been a suit against the Government of Guam itself. Ngiraingas v. Sanchez, 858 F.2d 1368, 1372 (9th Cir. 1988). Likewise here, even though the granting of injunctive relief does not itself affect the public treasury, a request for, and an award of, attorney fees following the injunction would most assuredly affect the public treasury. The Court is cognizant of those cases that treat attorney fees as "ancillary" to the merits of the case and which are deemed, therefore, not to affect the public treasury. See, e.g., Kentucky v. Graham, 473 U.S. at 170, n. 18; Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565 (1978); Edelman v. Jordan, 415 U.S. 651, 667-668 (1974); Maher v. Gagne, 448 U.S. 122, 131-132, 100 S.Ct. 2570, 2575-2576 (1980) and Gagne v. Maher, 594 F.2d 336, 341-342 (2nd Cir. 1979); Ward v. County of San Diego, 791 F.2d 1329, 1334 (9th Cir. 1986); and, Rutherford v. Pitchess, 713 F.2d 1416, 1419 (9th Cir. 1983).

21

at 1739, n. 3.

The distinction between personal-capacity liability and official-capacity liability was explained in Kentucky v. Graham, 473 U.S. at 166-168, 105 S.Ct. at 3105-3106 (1985):

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. (Citations omitted)
>
> *         *         *
>
> On the merits, to establish personal liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. (Citation omitted)
>
> *         *         *
>
> When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objective reasonable reliance on existing law . In an official-capacity action, these defenses are unavailable. (Citations omitted) The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment.
>
> *         *         *
>
> With this distinction in mind, it is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him. (Emphases in the original)

Graham involved a suit for money damages. Here, in contrast,

22

plaintiffs seek to enjoin Governor Ada, as an <u>individual</u>, from enforcing the provisions of Public Law 20-134. The Court does not believe it would be possible for the Governor, acting as a <u>private</u> <u>individual</u>, to enforce Public Law 20-134. The Court declines to enjoin Governor Ada, as an individual, under §1983.

ACCORDINGLY, for the reasons given above, summary judgment shall enter that Public Law 20-134 violates the United States Constitution, the Organic Act of Guam, and 42 U.S.C. §1983. Defendants, their employees, agents, and successors, are permanently enjoined from enforcing and/or executing any portion of Public Law 20-134.

IT IS SO ORDERED.

DATED this _23rd_ day of August, 1990.


_____
ALEX R. MUNSON
Judge


EOD 8/23/90

23

Baumann & Hull

ACKNOWLEDGED RECEIPT

By: _attorney General_
Date: _Aug 23 1990_

ACKNOWLEDGED RECEIPT
By: _____
Date: _8/23/90_

anita arriola
ACKNOWLEDGED RECEIPT
By: _____
Date: _8/23/90_

Katherine Maraman
ACKNOWLEDGED RECEIPT
By: _____
Date: _8-23-90_

Patrick Welt
ACKNOWLEDGED RECEIPT
By: _____
Date: _8/27/90_

Mones Lujan
ACKNOWLEDGED RECEIPT
By: _____
Date: _8-23-90_

Jeffrey A. Cook
ACKNOWLEDGED RECEIPT
By: _Annette Ch___
Date: _8/23/90_

Simon Heller
ACKNOWLEDGED RECEIPT
By: _____
Date: _____
Mailed 8/23/90
RSN