ORIGINAL

FILED
District Court of Guam
Agana, Guam

JUN 2 5 1991

MARY L. M. MORAN
Clerk Of Court

310

IN THE UNITED STATES DISTRICT COURT

TERRITORY OF GUAM

| | |
|---|---|
| GUAM SOCIETY OF OBSTETRICIANS AND GYNECOLOGISTS; GUAM NURSES ASSOCIATION; THE REVEREND MILTON H. COLE, JR.; LAURIE KONWITH; EDMUND A. GRILEY, M.D.; JOHN DUNLOP, M.D., on behalf of themselves and all others similarly situated, and all their women patients,<br><br>           Plaintiffs,<br><br>        v.<br><br>JOSEPH F. ADA, in his individual and official capacities; DR. LETICIA ESPALDON; GEORGE B. PALICAN; ELIZABETH BARRETT-ANDERSON; GLORIA B. NELSON, THOMAS J.B. CALVO, FLORENCIO T. RAMIREZ, LEONILA L.G. HERRERO and MICHAEL PHILLIPS, as the Board of Directors of the GUAM ELECTION COMMISSION, in their official capacities, together with all others similarly situated,<br><br>           Defendants | Civil Case No. 90-00013<br><br><br><br><br><br><br><br><br><br>DECISION AND ORDER RE AWARD OF ATTORNEY FEES |

THIS MATTER came before the Court on June 13, 1991, for

hearing of plaintiffs' motion for an award of attorney fees and

AO 72
(Rev.8/82)

costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 2412(d), or the Court's general equitable powers.

By decision and order dated August 23, 1990, this Court granted summary judgment in favor of plaintiffs. The decision found Guam's newly-enacted abortion law[1] unconstitutional under the United States Constitution, Guam's Organic Act, and 42 U.S.C. § 1983. Defendants Governor Joseph F. Ada, Attorney General Elizabeth Barrett-Anderson[2], Dr. Leticia Espaldon[3], and their respective employees, agents, and successors were permanently enjoined in their official capacities, under the Constitution, the Organic Act, and 42 U.S.C. § 1983, from enforcing and/or executing any provision of the law. Plaintiffs thereafter sought an award of reasonable attorney fees and costs as the prevailing party.

---

[1] Public Law 20-134, which had been signed into law by Governor Joseph F. Ada on March 19, 1990.

[2] Defendant Attorney General Barrett-Anderson did not submit a memorandum on the issue of attorney fees and costs and did not file a joinder with defendant Governor Ada's opposition.

[3] Dr. Espaldon is the Director of the Department of Public Health and Social Services for the Territory of Guam.

Also, defendant George B. Palican, the Administrator of Guam Memorial Hospital, agreed by stipulation filed June 25, 1990, "to abide by all injunctions and court orders and... be bound by the final judgment or decree in this action." The Guam Election Commission entered into a like stipulation.

2

AO 72
(Rev.8/82)

## Prevailing Party

Section 1988 of Title 42 of the United States Code provides in part that in "any action or proceeding to enforce a provision of section[]... 1983..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." A party prevails when it "'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit'." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1938-39 (1983)(quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).

Plaintiffs clearly prevailed in this action, a fact conceded in his memorandum and at oral argument by defendant Governor Ada. The Court's August 23, 1990, decision struck down as unconstitutional sections 2 through 5 of P.L. 20-134 and permanently enjoined the defendants from enforcing the law. Thus, plaintiffs have crossed the "statutory threshold" and "[i]t remains for the district court to determine what fee is 'reasonable'." Id.

## Reasonable Costs and Attorney Fees

In Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988), the Ninth Circuit said:

> The legislative history of § 1988 does not explain what constitutes a 'reasonable' attorney's fee, but it does endorse the multi-factor guidelines developed

3

AO 72
(Rev.8/82)

by the Fifth Circuit in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974). <u>See</u> <u>also</u> <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir. 1975), <u>cert.</u> <u>denied</u>, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The Supreme Court has interpreted this endorsement of a flexible standard by adopting a two-part test to channel the district court's exercise of discretion [to award attorney fees]. Under this "hybrid approach" to the calculation of a reasonable attorney's fee for the prevailing party, courts must first calculate a lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. <u>Hensley</u>, 461 U.S. at 433, 103 S.Ct. at 1939. Next, the court may increase or reduce the presumptively reasonable lodestar fee (citations omitted), with reference to the <u>Johnson</u>/<u>Kerr</u> factors that have not been subsumed in the lodestar calculation (citations omitted).[4]

As noted in <u>Hensley v. Eckerhart</u>, <u>supra</u>, the "lodestar" attorney fee is:

> ...the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should

_____

[4] The <u>Johnson</u>/<u>Kerr</u> factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the clients or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and, 12) awards in similar cases.

Not all of the <u>Kerr</u> factors need be considered if the most relevant factors are discussed and the decision is sufficiently detailed to provide meaningful review. <u>See</u>, <u>D'Emanuele v. Montgomery Ward & Co., Inc.</u>, 904 F.2d 1379, 1385 (9th Cir. 1990). The only firm conclusion the Court has drawn is that each case has its own particular admixture of <u>Johnson</u>/<u>Kerr</u> factors.

4

submit evidence supporting the hours worked and rates claimed.

Id., at 433.

The district court should "provide a concise but clear explanation of its reasons for the fee award." Id., at 437.

In their motion for attorney fees and costs, plaintiffs divide their claim for fees and costs into two parts. They first claim attorney fees for work performed and costs incurred during the time period from the initiation of the lawsuit to October 12, 1990, the date of the amended judgment.[5] They next claim attorney fees for time expended and costs incurred while seeking this award

_____

[5] For the first time period, and after adjustments made in light of certain of defendant Ada's objections, plaintiffs submit their claim for the following hours and rates:

| Attorneys and Paralegals | Hours | Rate | Amount |
|---|---|---|---|
| **Arriola, Cowan & Bordallo** | | | |
| Anita P. Arriola | 772.35 | $175 | $135,161.25 |
| Joaquin C. Arriola | 10.20 | $200 | $ 2,040.00 |
| Mark E. Cowan | 10.70 | $195 | $ 2,086.50 |
| **American Civil Liberties Union - Reproductive Freedom Project** | | | |
| Lynn Paltrow | 179.07 | $241 | $ 43,155.87 |
| Rachel Pine | 17.50 | $241 | $ 4,217.50 |
| Simon Heller (Attorney Hours) | 379.04 | $135 | $ 51,170.40 |
| Louise Melling | 38.50 | $135 | $ 5,197.50 |
| Ellen K. Goetz | 13.40 | $100 | $ 1,340.00 |
| Andrew W. Dwyer | 40.00 | $ 80 | $ 3,200.00 |
| S. Heller (Non-attorney Hours) | 10.50 | $ 25 | $ 262.50 |
| **ACLU Affiliate - Hawaii** | | | |
| Carl Varady | 16.00 | $150 | $ 2,400.00 |

5

AO 72
(Rev.8/82)

of fees and costs. The Court will address each time period in turn.

Reasonableness of Total Hours Claimed through Date of Amended Judgment, October 12, 1990

Defendant Governor Ada directly challenged only 43.3 of the nearly 1,500 hours of attorney and paralegal time claimed by plaintiffs. After reviewing the objections of defendant Ada, plaintiffs adjusted certain hours, billed some hours at lower rates, and provided to the Court a detailed accounting and summary documenting how and why certain adjustments were made and others were not. See, Hensley v. Eckerhart, supra.

The Court has carefully reviewed the documentation of hours[6] supplied by plaintiffs in support of their request for attorney fees and finds that the 1,487.26 hours claimed by plaintiffs were reasonably and necessarily spent by plaintiffs in their prosecution of this lawsuit and that plaintiffs' attorneys exercised appropriate billing judgment, given the novelty and difficulty of the questions presented by Guam's status as a territory, the extreme time limitations imposed by the circumstances, the particularized skill necessary to address the

_____

[6] To the extent that any of plaintiffs' attorneys' time records were reconstructed, the Court still finds that the hours claimed are reasonable. See, Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1473 (9th Cir. 1983).

6

constitutional issues presented, and the experience of the attorneys involved.[7]

Reasonableness of Hourly Rates Claimed through October 12, 1990

Reasonable fees under § 1988 are calculated according to the prevailing market rate in the community in which the litigation takes place. Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); D'Emanuele, supra, at 1384. The "reasonable hourly rate" is determined by reference to the hourly amount which private counsel of similar experience, reputation and skills could command in cases of similar complexity in the community. White v. City of Richmond, 713 F.2d 458, 460 (9th Cir. 1983). Because the standard under § 1988 is prevailing market rate and not the customary billing rate, the Court may consider awarding a higher than usual hourly rate. See, Maldonado v. Lehman, 811 F.2d 1341, 1342 (9th Cir.), cert. denied sub nom., Webb v. Maldonado, 484 U.S. 990 (1987).

Hourly Rates of Local Counsel

For local counsel (including Mr. Varady from the Hawaii office of the ACLU), plaintiffs seek hourly rates as follows:

_____

[7] Defendant Ada requested at oral argument that plaintiffs' attorneys' hours be reduced ten percent across-the-board. No support was given for this figure, and such a reduction is not supported by the facts of this case.

7

AO 72
(Rev.8/82)

Joaquin C. Arriola, $200.00 per hour, Mark C. Cowan, $195.00 per hour, Anita P. Arriola, $175.00 per hour, and Carl Varady, $150.00 per hour. These hourly rates are apparently higher than these attorneys customarily charge.

Defendant Ada acknowledges that the appropriate hourly rate to be awarded is the prevailing market rate in the community for attorneys of similar experience and skill but argues that the rates sought by Arriola, Cowan & Bordallo are too high, given the fee agreement[8] between the law firm and plaintiffs (which provided for an hourly rate of "at least $120.00"), the prevailing hourly rate on Guam, the relative simplicity of the case[9], and the experience, reputation, and skill of the four "local counsel" involved in this case. In particular, defendant Ada notes that

_____

[8] A pre-existing fee agreement does not limit the amount of attorney fees allowed under § 1988; rather, it is one of the factors to be considered in assessing the reasonableness of the award of attorney fees and is neither dispositive nor does it set a ceiling on the award. See, Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The court has considered the fee agreement itself, the circumstances under which it was entered, the understanding of the parties at the time, and, as shown above, the relationship between the hourly rate set forth in the agreement and the prevailing market rate on Guam. Even the fact that the attorneys may have agreed not to charge some or all of the plaintiffs anything for handling the case does not preclude an award of a reasonable attorney fee under § 1988. Id.

[9] In an Addendum to its contract with one of the Special Assistant Attorneys General hired to assist in this case, the government referred to the "novel substantive nature of the case" as one reason for substantially increasing the contract amount. See, Attachment to Declaration of Elizabeth Barrett-Anderson, filed February 11, 1991.

8

AO 72
(Rev.8/82)

at the beginning of this litigation, Joaquin C. Arriola billed his time at $150.00 per hour, Mark E. Cowan at $130.00 per hour, and Anita P. Arriola billed her time at $120.00 per hour.

Plaintiffs' local counsel augment their request for increased hourly rates with several affidavits from fellow members of the Guam bar. These affidavits show that the range of prevailing rates on Guam for lawyers of similar experience, skill, and reputation is from $150 to $225 per hour for partners and $100 to $150 per hour for associates. See, e.g., Declarations of J. Bradley Klemm, James S. Brooks, and G. Patrick Civille, filed November 15, 1990.

The Court has reviewed the several affidavits presented by plaintiffs and defendants to establish the prevailing market rate for Guam, and has determined that the hourly rates requested by Joaquin C. Arriola, Mark E. Cowan, Anita Arriola, and Carl Varady are reasonable when compared to the hourly rates of Guam attorneys of similar experience, skill, and reputation. Further, the Court has considered the experience, skill, and reputation of the four local counsel, as documented in their supporting papers. Messrs. Arriola and Cowan both possess high legal skills and years of experience in the Guam legal community. Each has a good reputation. Ms. Arriola, as will be discussed at greater length infra, possesses particular skill and experience in civil rights cases and was uniquely qualified on Guam to spearhead this effort

9

as lead local counsel. Mr. Varady also appears to possess the skills and experience necessary to justify the hourly rate sought. Each attorney's skills contributed to the successful result, which was achieved in a compressed time frame. Each attorney still faces the prospect of no recovery of fees or costs.

For the foregoing reasons, and because the enquiry is the prevailing market rate, rather than the hourly rate normally charged, the Court will award local counsel the requested hourly rates of $200.00, $195.00, $175.00, and $150.00, respectively. Based on the hours spent by each of these attorneys, plaintiffs lodestar reasonable attorney fees are as follows: Joaquin C. Arriola - $2,040.00, Mark E. Cowan - $2,086.50, Anita P. Arriola - $135,161.25, and Carl Varady - $2,400.00.

Hourly Rates of American Civil Liberties Union - Reproductive Freedom Project (ACLU-RFP)

The "prevailing market rate" rule applies to attorneys working for non-profit and "public interest" organizations. See, Blum v. Stenson, 465 U.S. at 896. In determining the reasonableness of a fee request from an attorney who tried the case in a community different than that in which she or he normally practices, the court may consider 1) the fee customarily charged for similar services in the locality where the attorney normally practices, 2) whether services of like quality are truly

10

available in the locality where they were rendered, and 3) whether the party acted reasonably in making the choice to bring in the attorney from a different community. Chrapilwy v. UniRoyal, Inc., 670 F.2d 760, 769 (7th Cir. 1982), cert. denied, 461 U.S. 956 (1983); Louisville Black Police Officers Organization, Inc. v. City of Louisville, 700 F.2d 268, 278 (6th Cir. 1983).[10] The court may also consider whether an award of attorney fees based on the prevailing market rate in the community in which the litigation is conducted, if less than that in which the attorney normally practices, will prevent those in smaller or more remote communities from obtaining the experienced legal counsel they need. See, Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983).

The rates requested for off-island counsel are $241.00 per hour for Lynn Paltrow and Rachel Pine, $135.00 per hour for Simon Heller and Louise Melling, $100.00 per hour for Ellen K. Goetz, $80.00 per hour for Andrew W. Dwyer, and $25.00 per hour for Simon Heller for work he performed which could have been performed by someone of less skill and experience.

The Court has reviewed the documentation and affidavits provided by off-island counsel in support of their claimed hourly rates and finds that the hourly rates they seek are reasonable and

---

[10] The Court has been unable to find a Ninth Circuit case adopting the same reasoning, perhaps because most areas of the Ninth Circuit have readier access to attorneys with specialized skills and experience in civil rights litigation than does Guam.

11

AO 72
(Rev.8/82)

justified. The time and labor spent by these attorneys was reasonable, and essentially unchallenged by defendants. The fact that Guam is a United States territory presented a novel aspect to the case. They possess, abundantly, the skills requisite to perform the legal service properly. The geographical distance and time differences between New York and Guam, combined with the rapidity with which the litigation unfolded, imposed additional burdens. The results obtained were exactly what they sought, but they still face the possibility of recovering neither their fees nor their costs. The Court further finds that the attorneys of the ACLU-RFP have unique experience and skill in these cases, and can marshal resources not available on Guam.

It was not only reasonable, but prudent, for plaintiffs to enlist the services of the ACLU-RFP attorneys to assist in this lawsuit. Therefore, the Court accepts as reasonable the hourly rates sought by plaintiffs for off-island counsel and specifically finds that by awarding these attorneys the prevailing market rate in the legal community in which they are based, other, similarly skilled attorneys will be induced to take their skills where they are needed but not readily available. Maceira, supra. The lodestar, reasonable attorney fees based on those rates are as follows: Lynn Paltrow - $43,155.87, Rachel Pine - $4,217.50, Simon Heller (attorney hours) - $51,170.40, Louise Melling - $5,197.50, Ellen K. Goetz - $1,340.00, Andrew W. Dwyer -$3,200.00,

AO 72
(Rev.8/82)

and Simon Heller (non-attorney hours) - $262.50.

Reasonableness of Costs Claimed through October 12, 1990

For this first time period, and again after adjustments made in light of objections made by defendant Ada, the law firm of Arriola, Cowan & Bordallo claims costs of $10,871.80 and the ACLU-RFP claims expenses of $19,578.67.

The Court has carefully reviewed the costs as documented and claimed by plaintiffs' attorneys and finds that they are reasonable and were necessarily incurred in the course of this litigation. Further, defendant Ada makes no objection to the revised costs as submitted.

Therefore, costs are awarded, through October 12, 1990, to the law firm of Arriola, Cowan & Bordallo in the amount of $10,871.80 and to the ACLU-RFP in the amount of $19,578.67.

Summary of Attorney Fees and Costs through October 12, 1990

Based on the foregoing analysis using the Kerr factors, local counsel Arriola, Cowan & Bordallo have been awarded lodestar attorney fees in the amount of $139,287.75 and costs of $10,871.80; Carl Varady has been awarded lodestar attorney fees in the amount of $2,400.00, and the ACLU-RFP has been awarded lodestar attorney fees in the amount of $108,543.77 and costs of $19,578.67.

13

## Post-Judgment Hours Spent and Expenses Incurred Seeking Fees and Costs

Plaintiffs also seek an award of fees and costs for time spent and expenses incurred in preparing for and arguing this motion for reasonable attorney fees and costs. The Court agrees that plaintiffs are entitled to recover attorney fees and costs for services rendered in seeking and establishing an attorney fees award. See, Knighton v. Walkins, 616 F.2d 795, reh. denied, 620 F.2d 300 (5th Cir. 1980); Souza v. Southworth, 564 F.2d 609, 613-14 (1st Cir. 1977).

The Court has reviewed the hours claimed and the costs incurred through March 11, 1991, and finds, using the Johnson/Kerr analysis employed hereinabove, that they are reasonable and were necessarily incurred in seeking this award of attorney fees and costs. Therefore, the Court awards reasonable attorney fees and costs as follows: Anita P. Arriola - 71.3 hours @ $175/hour = $12,477.50; Mark E. Cowan - 2.2 hours @ $195/hour = $429.00; Simon Heller - 62.62 hours @ $135/hour = $8,453.70. The law firm of Arriola, Cowan & Bordallo is awarded reasonable costs of $590.67 and the ACLU-RFP is awarded reasonable costs of $846.95. Also, the Court notes that Ms. Arriola has performed work, appeared at status conferences, met and/or otherwise conferred with opposing counsel in an attempt to stipulate to attorney fees and costs, and appeared and argued this motion. The Court believes that Ms.

14

AO 72
(Rev.8/82)

Arriola spent at least five hours since March 11, 1991, and therefore awards her additional attorney fees of $875.00.

The Multiplier

Plaintiffs seek to have their attorney fees award doubled. They base this request on the fact that they accepted the case as a contingent case, that it was an "undesirable" case in the community, and plaintiffs' difficulty in obtaining qualified counsel.

The product of reasonable hours times a reasonable hourly rate normally produces the reasonable attorney's fee. Hensley v. Eckerhart, 461 U.S. at 434. However, this

> ...does not end the enquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained."

Id.

"There is a 'strong presumption' that the lodestar figure computed by the method outlined above represents a 'reasonable' attorney's fee. (citations omitted) Nevertheless, in certain 'rare, exceptional cases' the lodestar figure may be adjusted upward or downward in consideration of the Kerr factors not subsumed. (citation omitted)." D'Emanuele, 904 F.2d at 1384.

The Court has found scant guidance in the caselaw for explicit facts which have been found to justify a particular

15

AO 72
(Rev.8/82)

multiplier. For example, in the opinion of a very divided Court, Justice O'Connor stated that a multiplier is justified if the fee applicant can establish that "without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market'.'' Pennsylvania v. Delaware Valley Citizens' for Clean Air, 483 U.S. 711, 733, 107 S.Ct. 3078, 3091 (1987)(Delaware II). Also, any enhancement for contingency must reflect "the difference in market treatment of contingent fee cases as a class, rather than... the 'riskiness' of a particular case'." Id. at 731 (emphasis in original).[11]

The burden of proving that an upward adjustment is necessary to establish a reasonable attorney fee is on the applicant. Blum v. Stenson, 465 U.S. at 898.

As noted above, when assessing the merit of a claimed multiplier, the district court uses those Johnson/Kerr factors which were not subsumed in the determination of the reasonable attorney fee award. Cunningham, 879 F.2d at 484.

_____

[11] In the Ninth Circuit, Fadhl v. City and County of San Francisco, 859 F.2d 649 (9th Cir. 1986), utilized the two factors identified in Delaware II in determining whether a multiplier was appropriate.

16

AO 72
(Rev.8/82)

Initially, the Court determines that there is no justification to award an enhanced attorney fee to the ACLU-RFP. The Reproductive Freedom Project exists to participate in this type of case and needs no inducement, such as the prospect of an enhanced fee upon a successful conclusion to the case, to become involved. Further, the ACLU-RFP attorneys have had their fees awarded based on the prevailing market rate in New York and they were not subject to the same community-based pressures as local counsel. The Court has considered those factors not subsumed in the "reasonable attorney fee award" analysis above and concludes that they do not justify application of a multiplier to the ACLU-RFP attorney fee award.[12] The Court next considers a multiplier for work performed by local counsel.[13]

Plaintiffs presented affidavits from local attorneys that indicate that contingent fee cases are not accepted on Guam unless the attorney or firm calculates that a successful lawsuit will recover an amount two to three times greater than would be billed a paying client for the same case. See, generally, the Declarations of J. Bradley Klemm, James S. Brooks, and G. Patrick

_____

[12] The Court is aware of the general admonition to treat private and pubic interest counsel equally, Blum, 465 U.S. at 902, n.18., but believes different treatment is warranted here, as explained infra.

[13] The Court does not consider, in this context, the work of Carl Varady of the Hawaii office of the ACLU to have been performed by "local counsel," for reasons which will be made apparent in the analysis.

17

AO 72
(Rev.8/82)

Civille, filed November 15, 1990. Mr. Klemm, in particular, averred that he could not remember in his 17 years of practice on Guam even one class action civil rights case of this magnitude. Id. at 3. He further stated that "such lawsuits are unappealing to firms on Guam due to their complexity, their usually controversial and undesirable nature, and the lack of a history of such litigation on the island." Id. He also expressed his belief that "lawyers and law firms on Guam are reluctant to take plaintiff class action civil rights cases because they take too many years to resolve, are too expensive to litigate, and tie up a firm's resources for long periods of time. Id. at 4.

Plaintiffs' counsel stated that the prospect of an upward adjustment of fees due to the risk inherent in contingent fee cases was a critical inducement in their decision to accept the case. See, Declarations of Anita P. Arriola and Simon Heller, filed November 15, 1990.

From all the affidavits submitted, it is clear that without the prospect of an upward adjustment for their attorneys, plaintiffs would have faced "substantial difficulties" in securing local counsel.[14] Delaware II, supra.

Plaintiffs also cite the undesirability of this case in

---

[14] Plaintiffs need only demonstrate that they would have encountered substantial difficulty in finding counsel at the time they commenced their lawsuit, not that they actually did face such difficulty. McKenzie v. Kennickell, 875 F.2d 330 (C.A.D.C. 1989), reh. denied, 884 F.2d 1405.

18

AO 72
(Rev.8/82)

support of their request for a multiplier. "Undesirability" has been accepted as an adjustment factor by the Ninth Circuit. <u>See</u>, <u>Clark v. City of Los Angeles</u>, 803 F.2d 987, 991 (9th Cir. 1986)(one factor justifying 1.5 multiplier); <u>Fadhl v. City and County of San Francisco</u>, 859 F.2d 649, 650-51 (9th Cir. 1986)(one factor justifying 2.0 multiplier).

The record reflects that plaintiffs' local attorneys accepted this case in the face of a unanimous Legislature, as well as a Governor who had taken a strong personal and political stand on the issue, despite both having been advised by the Attorney General that the law was unconstitutional. The Roman Catholic Church had also spoken publicly, even threatening excommunication of opponents of the law. Ms. Arriola's affidavit states that she received death threats, and encountered overt hostility from members of the community. The Court notes, and the record supports, that Guam is a relatively small and predominantly Catholic community and that this lawsuit was particularly emotionally-charged. Declarations of other local attorneys also indicate that plaintiffs would have had much difficulty finding local counsel, due to the high visibility of the case, the small size of the island, and the many conflicts of interest occasioned by the many parties involved. There is no doubt in my mind that this case was deemed extremely undesirable in the community and that local counsel faced unusual and trying personal and

19

AO 72
(Rev.8/82)

professional pressures during the pendency of this lawsuit.[15]

To the best of the Court's knowledge, and as acknowledged by several local attorneys, and as revealed by her curriculum vitae, there is no other attorney on Guam who possesses Ms. Arriola's combination of skill and experience in handling class action civil rights lawsuits of this size and complexity. Ms. Arriola's extensive experience made her particularly qualified to serve as lead local counsel and her professional and personal demeanor (as well as that of all the attorneys involved, on both sides of the issue) during this lawsuit brought honor to herself and the legal community as a whole.

The Court is further persuaded that Ms. Arriola undoubtedly was precluded from other employment when she accepted this case. As documented above, she spent many, many hours seeing it through to its conclusion.

Because of the contingent nature of the case, the undesirability of the case, and the extreme reluctance or conflicts of interest which prevented other local attorneys from representing plaintiffs, the Court believes that local counsel deserve a multiplier, that the particular facts and circumstances

_____

[15] It is interesting to note that this issue literally found families on opposite sides: Senator Elizabeth Arriola, sponsor of P.L. 20-134, is the mother of local lead counsel Anita P. Arriola. Although this fact plays no part in the Court's decision, it serves to illustrate not only the relatively small size of the community but also the often personal toll the issue might exact from the participants.

20

AO 72
(Rev.8/82)

of this case rendered it a "rare and exceptional" case justifying a multiplier, and that an appropriate multiplier is 2.0. This multiplier will be applied only for hours expended by local counsel up to and including October 12, 1990. See, e.g., Equal Opportunity Employment Commission v. Sage Realty Corporation, 521 F.Supp. 263 (D.C.N.Y. 1981)(no multiplier should be assigned to that part of the lodestar figure which is based on attorney fee application activities, because there was no longer a risk of loss). The Court believes this multiplier reflects the difference in Guam's market treatment of contingent fee cases as a class, rather than the "riskiness" of this particular case. Delaware II, supra.

## Conclusion

The Court awards reasonable attorney fees and costs to the ACLU-RFP in the amount of $108,543.77 and $19,578.67, respectively, for the time period through October 12, 1990.

The Court awards reasonable attorney fees to Carl Varady of the Hawaii office of the ACLU in the amount of $2,400.00, with no multiplier.[16]

The Court awards reasonable attorney fees for work performed up to and including October 12, 1990, after calculation using the multiplier, to local counsel Joaquin C. Arriola, Mark E. Cowan,

---

[16] See n. 13, p. 17, supra.

21

Case 1:90-cv-00013    Document 310    Filed 06/25/91    Page 21 of 22

and Anita P. Arriola in the amount of $278,575.50 (2 x $139,287.75 lodestar attorney fees for work performed through October 12, 1990).

The Court awards reasonable attorney fees to Arriola, Cowan & Bordallo for work performed after October 12, 1990, to date in the amount of $13,781.50.

The Court awards reasonable attorney fees to the ACLU-RFP for work performed by Simon Heller after October 12, 1990, in the amount of $8,453.70.

The firm of Arriola, Cowan & Bordallo is awarded reasonable costs in the amount of $10,871.80 for expenses incurred through October 12, 1990, and $590.67 for costs incurred after that date.

The ACLU-RFP is awarded costs in the amount of $846.95 for expenses incurred after October 12, 1990.

IT IS SO ORDERED.

DATED this 25=IH day of June, 1991.

EOD 6/25/91

_____
ALEX R. MUNSON
Judge

22

AO 72
(Rev.8/82)