Anita P. Arriola, Esq.
Arriola law firm
259 martyr street, suite 201
Hagåtña, Guam 96910
Tel: (671) 477-9730/33
Fax: (671) 477-9734
Email: aarriola@arriolafirm.com

Vanessa L. Williams, Esq.
Law Office of Vanessa L. Williams, P.C.
414 West Soledad Avenue
GCIC Bldg., Suite 500
Hagåtña, Guam 96910
Tel: (671) 477-1389
Email: vlw@vlwilliamslaw.com

Meagan Burrows*
Lindsey Kaley*
Zoraima Pelaez*
Scarlet Kim*
Johanna Zacarias*
Alexa Kolbi-Molinas*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
Fax: (212) 549-2649
Email: mburrows@aclu.org

* Request for admission pro hac vice forthcoming

Attorneys for Plaintiff and Proposed Intervenors

## IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| GUAM SOCIETY OF OBSTETRICIANS AND GYNECOLOGISTS, *et al.*,<br><br>Plaintiffs<br><br>vs.<br><br>LOURDES A. LEON GUERRERO, *et al.*,<br><br>Defendants. | CIVIL CASE NO. 90-00013<br><br>**PLAINTIFF AND PROPOSED INTERVENORS' OPPOSITION TO DEFENDANT ATTORNEY GENERAL DOUGLAS B. MOYLAN'S RULE 60(B)(5) MOTION** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

FACTUAL & PROCEDURAL BACKGROUND ......................................................... 1

    Guam Public Law No. 20-134 ................................................................................ 1

    The District Court Proceedings and Ninth Circuit Appeal ...................................... 2

    Abortion in Guam Since 1990 ................................................................................ 3

    *Dobbs v. Jackson Women's Health Organization* and Subsequent Litigation ........................... 4

STANDARD OF REVIEW ......................................................................................... 5

ARGUMENT ............................................................................................................. 7

    I.   The Attorney General Cannot Satisfy His Heavy Burden of Showing That Applying the Permanent Injunction Prospectively Is Inequitable. .................................... 7

        A.  The Attorney General Cannot Show That *Dobbs* Warrants Vacating a Permanent Injunction Against A Ban That Is Otherwise Null and Void. ..................... 7

        B.  The Attorney General's Proposal to Vacate the Injunction in Its Entirety Is Not Suitably Tailored to the Change in Law Created by *Dobbs*. .......................... 15

            i.   Section 5's Prohibition on Solicitation Is Unconstitutionally Overbroad. ........... 16

                1.  Section 5 Criminalizes Speech About Legal Abortion. ................................. 18

                2.  Section 5 Criminalizes Speech Absent Specific Intent to Solicit Illegal Abortion. ............................................................................. 21

                3.  Section 5 Criminalizes Abstract Advocacy of Abortion............................... 23

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiffs and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **i** of **viii**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 2 of 41

      ii.  Section 4 Is Unconstitutional to The Extent It Prohibits Guam Residents from

            Obtaining Abortion Where Abortion Is Legal. ...................................................... 26

CONCLUSION ......................................................................................................................... 31

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiffs and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion   Page **ii** of **viii**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 3 of 41

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton,*
521 U.S. 203 (1997) ........................................................................... 6, 11, 12

*Am. Unites for Kids v. Rousseau,*
985 F.3d 1075 (9th Cir. 2021) .................................................................. passim

*Ashcroft v. Am. Civ. Liberties Union,*
542 U.S. 656 (2004) ............................................................................ 26

*Ashcroft v. Free Speech Coal.,*
535 U.S. 234 (2002) ............................................................................ 21

*Ayotte v. Planned Parenthood of N. New England,*
546 U.S. 320 (2006) ............................................................................ 13

*Bellevue Manor Assocs. v. United States,*
165 F.3d 1249 (9th Cir. 1999) .............................................................. 6, 7, 15

*Bigelow v. Virginia,*
421 U.S. 809 (1975) ......................................................................... 19, 28

*BMW of N. Am., Inc. v. Gore,*
517 U.S. 559 (1996) .................................................................... 28, 29, 30

*Bordallo v. Baldwin,*
624 F.2d 932 (9th Cir. 1980) ................................................................... 8

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973) ............................................................................ 26

*Cal. ex rel. Becerra v. EPA,*
978 F.3d 708 (9th Cir. 2020) ............................................................. 11, 12

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiffs and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **iii** of **viii**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 4 of 41

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*,

    492 F.3d 484 (4th Cir. 2007) ............................................................ 27

*Conant v. Walters*,

    309 F.3d 629 (9th Cir. 2002) ...................................................... 21, 23

*Dobbs v. Jackson Women's Health Org.*,

    142 S. Ct. 2228 (2022) ............................................................... 4, 9, 19

*Giboney v. Empire Storage & Ice Co.*,

    336 U.S. 490 (1949) ...................................................................... 10, 18

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,

    776 F. Supp. 1422 (D. Guam 1990)................................... 2, 9, 10, 16

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,

    962 F.2d 1366 (9th Cir. 1992) ................................... 2, 3, 9, 10

*Gutierrez v. Guam Election Comm'n*,

    2011 Guam 3 (Guam Feb. 3, 2011) ............................................ 11

*Haeuser v. Dep't of L., Gov't of Guam*,

    97 F.3d 1152 (9th Cir. 1996) ......................................................... 8

*Horne v. Flores*,

    557 U.S. 433 (2009)................................................................... 6, 13

*In re Request of Calvo*,

    2017 Guam 14 (Guam Nov. 29, 2017) ....................................... 8

*In re Request of Guerrero*,

    2021 Guam 6 (Guam July 2, 2021)............................................ 8

*In re Request of Gutierrez*,

    2002 Guam 1 (Guam Feb. 7, 2002) ........................................... 8

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiffs and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **iv** of **viii**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 5 of 41

*June Med. Servs. LLC v. Phillips*,

    No. 14-525-JWD-RLB, 2022 WL 16924100 (M.D. La. Nov. 14, 2022) .................................. 12

*Martella v. Marine Cooks & Stewards Union*,

    448 F.2d 729 (9th Cir. 1971) ................................................................................................ 6

*McCorvey v. Hill*,

    385 F.3d 846 (5th Cir. 2004) ............................................................................................... 13

*Minn. Voters All. v. Mansky*,

    138 S.Ct. 1876 (2018) ......................................................................................................... 26

*MKB Mgmt. Corp. v. Wrigley*,

    No. 1:13-CV-071, 2022 WL 17734408 (D.N.D. Nov. 17, 2022) ........................................... 31

*Nielsen v. Oregon*,

    212 U.S. 315 (1909) ...................................................................................................... 28, 29

*Planned Parenthood of Se. Pa. v. Casey*,

    505 U.S. 833 (1992) .............................................................................................................. 9

*Raidoo v. Camacho*,

    No. CV 21-00009, 2021 WL 4076772 (D. Guam Sept. 3, 2021) ........................................... 3

*Reed v. Town of Gilbert*,

    576 U.S. 155 (2015) ............................................................................................................ 26

*Roe v. Wade*,

    410 U.S. 113 (1973) .............................................................................................................. 4

*Rufo v. Inmates of Suffolk Cnty. Jail*,

    502 U.S. 367 (1992) .................................................................................................... passim

*Russello v. United States*,

    464 U.S. 16 (1983) ............................................................................................................. 22

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiffs and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **v** of **viii**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 6 of 41

*Saenz v. Roe*,

    526 U.S. 489 (1999) ................................................................. 19

*State Farm Mut. Auto. Ins. Co. v. Campbell*,

    538 U.S. 408 (2003) ................................................... 28, 29, 30

*Staples v. United States*,

    511 U.S. 600 (1994) ................................................................. 22

*United States v. Borja*,

    191 F. Supp. 563 (D. Guam 1961) ........................................ 8

*United States v. Freeman*,

    761 F.2d 549 (9th Cir. 1985) .......................................... passim

*United States v. Henderson*,

    998 F.3d 1071 (9th Cir. 2021) ............................................... 9

*United States v. Stevens*,

    559 U.S. 460 (2010) ............................................ 16, 17, 18, 26

*United States v. Swift & Co.*,

    286 U.S. 106 (1932) ................................................................. 30

*United States v. Williams*,

    553 U.S. 285 (2008) ........................................................ passim

*Weeks v. Connick*,

    733 F. Supp. 1036 (E.D. La. 1990) ...................................... 13

**Statutes**

48 U.S.C. § 1421b(u) .......................................................... 9, 28

48 U.S.C. § 1423a ................................................................ 8, 9

Ark. Code Ann. § 5-61-301 *et seq.* ...................................... 14

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiffs and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **vi** of **viii**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 7 of 41

Guam Public Law 20-134 ................................................................................ passim

9 G.C.A. § 13.20 .................................................................................................. 22

9 G.C.A. § 31.20 ............................................................................................... 3, 4

10 G.C.A. § 3218 .................................................................................................. 3

10 G.C.A. § 3218.1 ............................................................................................... 3

10 G.C.A. §§ 91A101 *et seq.* ............................................................................ 3

19 G.C.A. §§ 4a101 *et seq.* ............................................................................... 3

Ky. Rev. Stat. Ann. § 311.772(2)(a) ................................................................ 14

Tenn. Code Ann. § 39-15-213 .......................................................................... 14

**Rules**

Federal Rule Civil Procedure 60(b)(5) ......................................................... 1, 6

**Other Authorities**

Guam Att'y Gen. Op. No. LEG-22-0324 (July 6, 2022) .............................. 4, 11

Request for Declaratory Judgment, *In re Request of Lourdes A. Leon Guerrero,*

   *I Maga'hågan Guåhan, Relative to the Validity and Enforceability of*

   *Public Law No. 20-134*, No. CRQ23-001 (Guam Jan. 23, 2023). .............. 5

11 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2851 (3d ed.) ................ 6

*Solicitation*, Black's Law Dictionary (11th ed. 2019) ................................ 17

Amy Goodman, *Guam Territory in Turmoil*, On The Issues Magazine

   (Winter 1990), www.ontheissuesmagazine.com/1990winter/win90_1.php ............ 10

Guttmacher Inst., *Interactive Map: U.S. Abortion Policies and Access After Roe,*

   Mar. 5, 2023, *available at* https://states.guttmacher.org/policies/ ............ 19

*Judge Suspends Enforcement of Tough Abortion Law in Guam*, Deseret News

   (Mar. 26, 1990) ................................................................................... 10

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiffs and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion   Page **vii** of **viii**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 8 of 41

Audrey McAvoy, *On Remote US Territories, Abortion Hurdles Mount Without Roe*, AP News (May 27, 2022), *available at* https://apnews.com/article/abortion-us-supreme-court-health-united-states-1b19f3b64f403ce40a3f382d36b8f0a9 ................................................. 3

John O'Connor, *Incoming AG Seeks to Dissolve Court Injunction Over Guam's Abortion Ban*, The Guam Daily Post (Nov. 27, 2022), https://www.postguam.com/news/local/incoming-ag-seeks-to-dissolve-court-injunction-over-guams-abortion-ban/article_34d806fc-6c8f-11ed-ab59-4f407698e570.html ........................................................................... 4

Dana Williams, *Moylan Wins AG Race by 39 Votes*, Pacific Daily News (Nov. 24, 2022), https://www.guampdn.com/news/moylan-wins-ag-race-by-39-votes/article_91b65d10-6b22-11ed-be2a-f3fa93fccbdd.html ................................................................................... 4

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiffs and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion  Page **viii** of **viii**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 9 of 41

With his motion, Attorney General Douglas B. Moylan ("Attorney General" or "movant") seeks to undermine the principle of finality and effectively repeal the comprehensive statutory framework regulating legal abortion that has developed in Guam over the past thirty-three years. What is more, he seeks to revive an archaic law that is not only null and void, but also replete with constitutional infirmities unaffected by the U.S. Supreme Court's overturning of *Roe v. Wade*. Because the movant cannot show that, under these circumstances, "applying [the injunction] prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5), the motion should be denied.[1]

## FACTUAL & PROCEDURAL BACKGROUND[2]

### Guam Public Law No. 20-134

Over three decades ago, the 20th Guam Legislature passed, and then-Governor Joseph F. Ada signed into law, Public Law 20-134 (P.L. 20-134 or the "Ban"). The Ban criminalizes essentially all abortion in Guam, and also criminalizes the "solicitation" of abortion. *See* P.L. 20-134. Specifically, the Ban establishes criminal penalties for (1) anyone (including a Guam-licensed physician) who provides or administers drugs or uses any instrument or other means with the intent to cause an abortion, *id*. § 3 ("Section 3"); (2) anyone who solicits and takes any drug or medicine, or submits to any operation, or to the use of any other means, with the intent to cause an abortion, *id*. § 4 ("Section 4"); and (3) anyone who solicits *another* to submit to any operation, or to the use of any means, to cause an abortion, *id*. § 5 ("Section 5"). These criminal prohibitions apply to *all* abortions throughout pregnancy, the only exceptions being: (1) abortions for ectopic

---

[1] Because the movant has not satisfied the requirements of Rule 60(b)(5), the motion should be denied in its entirety. Alternatively, as discussed *infra* I.B, this Court should grant the motion only in part, *modifying* the injunction, rather than vacating it entirely, so that the Ban's ongoing unconstitutional provisions and applications remain enjoined, and permit Plaintiff Freeman and the proposed Plaintiff-Intervenors (together, "Plaintiffs") to amend the Complaint.

[2] Unless otherwise noted, all emphasis is added and all internal quotation marks and citations are omitted.

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **1** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 10 of 41

pregnancies; and (2) abortions where "two (2) physicians who practice independently of each other reasonably determine using all available means that there is a substantial risk that continuance of the pregnancy would endanger the life of the mother or would gravely impair the health of the mother," which are still subject to subsequent peer review. *Id*. § 2.

P.L. 20-134 also provided for an island-wide "[a]bortion referendum," on November 6, 1990, on the question of whether the law should be repealed as of December 1, 1990. *Id*. at § 7. Due to the permanent injunction issued by this Court, the referendum was never held and the specified dates have long since passed.

## The District Court Proceedings and Ninth Circuit Appeal

Plaintiffs filed the original Complaint in this matter on March 23, 1990. Compl., ECF No. 1. Plaintiffs alleged that the Ban violated, *inter alia*, the First, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution, the Organic Act of Guam, and the Guam Equal Rights Statute. *See id.* ¶¶ 48–61; Second Amended Compl. ¶¶ 50–69, ECF No. 154. On August 23, 1990, this Court granted Plaintiffs' motion for summary judgment and permanently enjoined enforcement of the Ban. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 776 F. Supp. 1422, 1431 (D. Guam 1990), *aff'd*, 962 F.2d 1366 (9th Cir. 1992), *as amended* (June 8, 1992). This Court held that *Roe v. Wade* applied to Guam, and that "[b]ecause Sections 2, 3, 4, and 5 . . . of the [Ban] fail to make distinctions based on the stage of pregnancy" and fail to recognize "other constitutionally-protected interests involved, [the Ban] violates the Due Process Clause of the Fourteenth Amendment, as it applies to Guam via [the Organic Act]." *Id*. at 1428–29. This Court also held that the Ban's solicitation prohibition violated the First Amendment. *Id*. at 1428 n.9. Governor Ada appealed,[3] the Ninth Circuit affirmed this Court's holding, and the Supreme Court denied certiorari. *Guam Soc'y of Obstetricians &*

---

[3] Governor Ada did not appeal this Court's First Amendment holding. *See Ada*, 962 F.2d at 1369.

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion      Page **2** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 11 of 41

*Gynecologists v. Ada*, 962 F.2d 1366, 1369, 1374 (9th Cir. 1992), *cert. denied*, 506 U.S. 1011 (1992). The case was subsequently closed and sat undisturbed for over thirty years.

**Abortion in Guam Since 1990**

In the decades since this Court permanently enjoined the Ban, successive Guam legislatures have replaced the invalid Ban with a comprehensive statutory framework regulating abortion as lawful medical care, and setting forth the circumstances under which this care can be provided in Guam. *See, e.g.*, 9 G.C.A. § 31.20 (provisions authorizing abortion "reinstated" as operative law after by P.L. 20-134 was "declared null and void"); 10 G.C.A. § 3218 (reporting requirements); 10 G.C.A. §§ 91A101-91A111 (restricting certain abortion method); 19 G.C.A. §§ 4a101-4a1011 (requiring parental consent for a minor's abortion); 10 G.C.A. § 3218.1 (imposing informed consent requirements for abortion).

In 2018, Plaintiff Freeman—the last known on-island provider of abortions—stopped providing abortions. *Raidoo v. Camacho*, No. CV 21-00009, 2021 WL 4076772, at *1 (D. Guam Sept. 3, 2021); Mot. to Intervene, Ex. 2, Decl. of William S. Freeman, M.D. ("Freeman Decl.") ¶ 3. With no known abortion provider on the island, pregnant people in Guam seeking abortions were forced to travel to Hawaiʻi and the mainland United States. *See* Audrey McAvoy, *On Remote US Territories, Abortion Hurdles Mount Without Roe*, AP News (May 27, 2022), *available at* https://apnews.com/article/abortion-us-supreme-court-health-united-states-1b19f3b64f403ce40a3f382d36b8f0a9; *Raidoo*, WL 4076772, at *5. At this time, proposed Plaintiff-Intervenors Drs. Shandhini Raidoo and Bliss Kaneshiro ("Proposed Intervenors"), two highly qualified OB/GYNs licensed in Hawaiʻi and Guam, and based in Oʻahu, Hawaiʻi, with thirty years of combined experience providing a full spectrum of reproductive health care (including pre-natal care, labor and delivery, and abortion care), saw increased numbers of abortion patients from Guam in their Oʻahu-based practice. *See* Mot. to Intervene, Ex. 4, Decl. of

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **3** of 32

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 12 of 41

Bliss Kaneshiro, M.D., M.P.H. ("Kaneshiro Decl.") ¶¶ 1–5, 25–28; Mot. to Intervene, Ex. 3, Decl. of Shandhini Raidoo, M.D., M.P.H. ("Raidoo Decl.") ¶¶ 1–4, 24–28. And, in January 2022, pursuant to separate litigation filed in this Court, Proposed Intervenors also began providing medication abortion via telemedicine to eligible patients in Guam. *See* Kaneshiro Decl. ¶¶ 33–35; Raidoo Decl. ¶¶ 32–34. Proposed Intervenors intend to continue providing medication abortion via telemedicine to residents of Guam, as well as in-person abortion (procedural and/or medication abortion) to Guam residents who travel to Hawai'i for care. *See* Kaneshiro Decl. ¶¶ 9–10, 52; Raidoo Decl. ¶¶ 8–9, 51.

### *Dobbs v. Jackson Women's Health Organization* **and Subsequent Litigation**

On June 24, 2022, the U.S. Supreme Court issued its opinion in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), overturning, *inter alia*, *Roe v. Wade*, 410 U.S. 113 (1973). Following *Dobbs*, and in response to a request from members of the 36th Guam Legislature, then-Attorney General Leevin Camacho issued an opinion that the 20th Guam Legislature had exceeded its Organic Act authority in enacting the Ban and concluded that, accordingly, the Ban was void *ab initio* and "has had no legal effect on Guam since its passage." *See* Guam Att'y Gen. Op. No. LEG-22-0324 (July 6, 2022) at 5. Based on this opinion, the provisions of P.L. 20-134 have not been codified in the Guam Code Annotated. *See* 9 G.C.A. § 31.20. Last November, Douglas Moylan defeated incumbent Leevin Camacho in the general election for Attorney General of Guam.[4] Days after the election, Attorney General-elect Moylan publicly announced that, once he assumed office, he would file a motion in this Court to dissolve the injunction in this case.[5]

---

[4] Dana Williams, *Moylan Wins AG Race by 39 Votes*, Pacific Daily News (Nov. 24, 2022), https://www.guampdn.com/news/moylan-wins-ag-race-by-39-votes/article_91b65d10-6b22-11ed-be2a-f3fa93fccbdd.html.

[5] John O'Connor, *Incoming AG Seeks to Dissolve Court Injunction Over Guam's Abortion Ban*, The Guam Daily Post (Nov. 27, 2022), https://www.postguam.com/news/local/incoming-ag-seeks-to-dissolve-court-injunction-over-guams-abortion-ban/article_34d806fc-6c8f-11ed-ab59-4f407698e570.html.

On January 23, 2023, in anticipation of Attorney General Moylan's promised motion, Governor Guerrero requested a declaratory judgment from the Supreme Court of Guam as to whether: 1) the Ban is "void forever, such that it cannot be revived following a change in the constitutional doctrine reversing *Roe v. Wade*"; 2) the passage of the Ban in 1990 was an *ultra vires* act, because it exceeded the Guam legislature's authority under the Organic Act; and 3) (to the extent the Ban is not void) the Ban has been "impliedly repealed by subsequent legislation the Guam Legislature passed regulating abortion on Guam." *See* Request for Declaratory Judgment, *In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan, Relative to the Validity and Enforceability of Public Law No. 20-134* (hereinafter, "*In re Request of Guerrero*"), No. CRQ23-001, at 18 (Guam Jan. 23, 2023).

On February 1, 2023, the Attorney General filed the pending Rule 60(b)(5) motion seeking to vacate the permanent injunction and dismiss this case with prejudice. Def. Moylan's Mot. to Vacate Permanent Inj. and Dismiss with Prejudice, ECF No. 357; Mem. Supp. Def. Moylan's Mot., ECF No. 358 ("Mot."). On February 13, 2023, the Governor moved this Court to abstain from further proceedings on the 60(b)(5) motion and stay this matter, pending resolution of the local law question currently before Supreme Court of Guam. *See* Mot. for Abstention, ECF No. 368; Mem. of P. & A. Supp. Mot. for Abstention, ECF No. 367.

On February 18, 2023, the Guam Supreme Court accepted jurisdiction over Questions 2 and 3, setting the matter for oral argument on April 25, 2023. Suppl. Decl. Supp. Mot. for Abstention, ECF No. 376, Ex. A, Order of the Supreme Court of Guam ("GSC Order").

## **STANDARD OF REVIEW**

Rule 60(b) is a narrow exception to the general rule of finality that balances the demands of res judicata with courts' inherent authority to modify final orders. *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021) (stating that the "additional interest in the finality

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion      Page **5** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 14 of 41

of judgments" limits courts' authority to modify injunctions); 11 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2851 (3d ed.) ("Generally, the cases interpreting Rule 60(b) have reflected the courts' preference for finality.").

Under Rule 60(b)(5), a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" in limited circumstances, including when "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Under the equity provision of Rule 60(b)(5), relied on by the Attorney General here, Mot. 3, the movant bears the burden of establishing both (1) that there has been "'a significant change in facts or law [that] warrants revision of the decree,'" and (2) that "'the proposed modification [is] suitably tailored to the changed circumstance.'" *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 393 (1992)). "If the moving party cites significantly changed circumstances, it must also show that the changed conditions make compliance with the [order] more onerous, unworkable, or detrimental to the public interest." *Rousseau*, 985 F.3d at 1097–98.

While movants must satisfy their burden in order to prevail, Rule 60(b)(5) "motions are addressed to the sound discretion of the district court." *Martella v. Marine Cooks & Stewards Union, et al.*, 448 F.2d 729, 730 (9th Cir. 1971). The Ninth Circuit has granted district courts significant flexibility in exercising this discretion, permitting them "to take *all* the circumstances into account" in determining whether to vacate or modify final relief. *See, e.g.*, *Bellevue*, 165 F.3d at 1256. Thus, in considering whether the "factual or legal landscape has changed" to warrant relief, a court may examine the *entire* legal landscape, including "subsequent changes in either *statutory* or decisional law." *Agostini v. Felton*, 521 U.S. 203, 215, 216 (1997); *see also Horne v. Flores*, 557 U.S. 433, 448 (2009) (noting particular value of Rule 60(b)(5) in evaluating "changes in the nature of the underlying problem, changes in governing law or its interpretation by the

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion          Page **6** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 15 of 41

courts, and new policy insights" regarding longstanding injunctive relief).

## <u>ARGUMENT</u>

**I.  The Attorney General Cannot Satisfy His Heavy Burden of Showing That Applying the Permanent Injunction Prospectively Is Inequitable.**

Despite pointing to a "significant change" in the law—specifically, *Dobbs*' reversal of *Roe*, Mot. 2–3—the Attorney General does not come close to satisfying his burden for obtaining relief under 60(b)(5). Nor could he. First, the movant cannot show that this change in *decisional* law "warrants revision," *Bellevue*, 165 F.3d at 1255, of the permanent injunction by making continued compliance "more onerous, unworkable, or detrimental to the public interest," or otherwise "no longer equitable." *Rousseau*, 985 F.3d at 1097–98. This is because, notwithstanding the asserted legal change, the Ban was void *ab initio*, as it exceeded the Guam legislature's authority under the Organic Act when it was passed in 1990. Second, even if the Attorney General *were* able to show that *Dobbs* warranted modification of the final judgment here, his proposed modification—vacatur of the injunction in its entirety—is not "suitably tailored." *Bellevue*, 165 F.3d at 1255. As detailed below, multiple sections of the Ban remain plagued by constitutional infirmities, notwithstanding *Dobbs*, and therefore lifting the injunction entirely as to these provisions would "create or perpetuate a constitutional violation," which a modification under 60(b)(5) cannot do. *Rufo*, 502 U.S. at 391. Accordingly, vacatur of the injunction is unwarranted and inappropriate here.

**A. The Attorney General Cannot Show That *Dobbs* Warrants Vacating a Permanent Injunction Against A Ban That Is Otherwise Null and Void.**

Plaintiffs do not dispute that the Supreme Court's decision in *Dobbs* altered federal constitutional law on abortion by reversing *Roe v. Wade*. But *Dobbs*—standing alone—is not dispositive as to the Attorney General's ability to prevail on his 60(b)(5) motion. Rather, as noted above, in order to satisfy his burden under Rule 60(b)(5), the Attorney General must also show

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **7** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 16 of 41

that the change in law he identifies "*warrant[s]* modification" of the injunction. *See, e.g.*, *Rousseau*, 985 F.3d at 1097–98. The movant has not made and cannot make that showing here, where the enjoined law was void *ab initio* because it exceeded the 20th Guam Legislature's authority under the Organic Act.

"The Organic Act serves the function of a constitution for Guam." *Haeuser v. Dep't of L., Gov't of Guam*, 97 F.3d 1152, 1156 (9th Cir. 1996); *see also In re Request of Guerrero*, 2021 Guam 6 ¶ 34 (Guam July 2, 2021) ("The Organic Act not only serves as the constitution of Guam, it is also a federal statute."). "In general, it provides for the three branches of government consistent with the constitutional structure of the United States and the powers of each branch flow from, and are limited by the Organic Act." *Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980). Under the Organic Act, the Guam legislature's authority to pass laws extends only to "subjects of legislation *not inconsistent with* the provisions of this chapter and *the laws of the United States applicable to Guam*." 48 U.S.C. § 1423a; *see also United States v. Borja*, 191 F. Supp. 563, 566 (D. Guam 1961) ("[T]he Guam legislature's power to legislate is prescribed and limited by the Organic Act, by other acts of Congress and by provisions of the United States Constitution."); *In re Request of Gutierrez*, 2002 Guam 1 ¶ 36 (Guam Feb. 7, 2002) ("[T]he Legislature is prohibited from enacting laws that are inconsistent with the Organic Act.").

Where the Guam legislature exceeds its authority in passing laws that violate the Organic Act, including the limits on its power that the Act imposes, those laws are inorganic and therefore void. *See Baldwin*, 624 F.2d at 934 (holding legislation limiting Governor's authority over hospital to mere ministerial function, despite Organic Act's broad grant of oversight, exceeded legislature's power under the Organic Act and was invalid); *In re Request of Guerrero*, 2021 Guam 6 ¶ 55 (Guam July 2, 2021) (holding where the "Legislature . . . exceeded its power" under the Organic Act, its legislative act was "inorganic and void"); *In re Request of Calvo*, 2017 Guam

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion          Page **8** of 32

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 17 of 41

14 ¶¶ 21, 50 (Guam Nov. 29, 2017) (holding that law changing the number of votes required to pass final legislation exceeded the legislature's authority under the Organic Act and was thus inorganic, "invalid and void").

At the time the Ban was passed in 1990, the U.S. Constitution's First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and binding federal Supreme Court precedent interpreting them—including *Roe v. Wade*—were established law in the United States "applicable to Guam," 48 U.S.C. § 1423a. *See id.* § 1421b(u) (extending, *inter alia*, "the first to ninth amendments [to the U.S. Constitution] . . . [and] the second sentence of section 1 of the fourteenth amendment" to Guam, and stating that these amendments "shall have the same force and effect [in Guam] as in the United States or in any State of the United States"); *see also Ada*, 776 F. Supp. at 1426–28 ("It follows, then, when interpreting subsection (u), that since the decisions of the United States Supreme Court, including *Roe v. Wade*, are the law of the land, they apply with equal force and effect to the Territory of Guam."); *Ada*, 962 F.2d at 1370 (affirming "*Roe v. Wade* applies to Guam as it applies to the states").[6]

The Attorney General does not (and cannot) dispute that both the ban on pre-viability abortion and solicitation of abortion violated "the laws of the United States applicable to Guam," 48 U.S.C. § 1423a, when the Ban was passed. As to the ban on abortion, *Roe v. Wade*'s "central holding" established a categorical, bright-line rule that "[r]egardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879, (1992), *overruled by Dobbs*, 142 S. Ct. 2228. As this Court held, and as the

---

[6] Because *Dobbs* in no way impacts the Ninth Circuit's holding that federal Supreme Court precedent interpreting the Fourteenth Amendment's Due Process Clause (including, at the time the Ban was passed, *Roe*) applies to Guam, that opinion remains binding. *See United States v. Henderson*, 998 F.3d 1071, 1074 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 810 (2022) ("We are bound by our prior opinion unless an intervening case so undercuts the theory or reasoning underlying the prior circuit precedent as to make it clearly irreconcilable with that intervening authority.").

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **9** of 32

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 18 of 41

Ninth Circuit affirmed, the Ban's blanket prohibition on nearly all abortions prior to the point of viability violated the Due Process Clause of the Fourteenth Amendment. *Ada*, 776 F. Supp. at 1428–29; *Ada*, 962 F.2d at 1371 ("The first issue is not hard to resolve. Guam's Act makes no attempt to comply with *Roe*.").[7] Even the law's sponsor, Senator Elizabeth Arriola, and then-Attorney General Elizabeth Barrett-Anderson conceded that the Ban was unconstitutional under *Roe*.[8]

The Ban's solicitation prohibition was also unconstitutional at the time of passage, and thus beyond the power of the Guam legislature. Because abortion was a constitutionally protected right—and abortion (prior to viability) could not be subject to outright criminal prohibition—speech soliciting an abortion prior to viability was nothing more than speech soliciting a legal act, falling well within the protections of the First Amendment. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) ("[T]he constitutional freedom for speech and press" does not "extend[] its immunity to speech or writing used as an integral part of conduct *in violation of a valid criminal statute*."); *United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985) ("[W]here speech becomes an integral part of *the crime*, a First Amendment defense is foreclosed . . . ."). Accordingly, this Court held that the Ban's solicitation prohibition violated the First Amendment.

Because the 20th Guam Legislature lacked authority to enact the Ban under 48 U.S.C. § 1423a of the Organic Act, its passage was an inorganic, *ultra vires* act that exceeded the

---

[7] At the time of judgment, this Court identified Section 3 as the ban on abortion that contravened *Roe*, and characterized Section 4 as a prohibition on the freedom of speech in violation of the First Amendment. *Ada*, 776 F. Supp. at 1429, nn. 8–9. As discussed below, the plain text of Section 4 in fact criminalizes the patient for the *act* of *obtaining* abortion care (not for their speech, standing alone). Because banning a pregnant person from obtaining an abortion prior to the point of viability was also unconstitutional under *Roe* at the time Section 4 was enacted, Section 4 was also void from the moment of passage.

[8] *See* Amy Goodman, *Guam Territory in Turmoil*, On The Issues Magazine (Winter 1990), www.ontheissuesmagazine.com/1990winter/win90_1.php (Senator Arriola stating that, "I knew if [the judge] went according to *Roe v. Wade*, he would rule this way."); *Judge Suspends Enforcement of Tough Abortion Law in Guam*, Deseret News (Mar. 26, 1990) ("Attorney General Elizabeth Barrett-Anderson had advised the legislature and the governor that the bill was unconstitutional [*sic*]").

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **10** of 32

legislature's authority. Accordingly, irrespective of *Dobbs* or any other Supreme Court decision concerning abortion issued after the Ban was enacted, the Ban was a legal nullity the moment it was passed and can have no force or effect today. *Gutierrez v. Guam Election Comm'n*, 2011 Guam 3 ¶ 38 (Guam Feb. 3, 2011) (ultra vires acts are void); *see also* Att'y Gen. Op. Mem LEG-22-0324 (July 6, 2022) at 3–7 (concluding that the Ban violated the Constitution and Organic Act when passed and was therefore void *ab initio*).

Attorney General Moylan's motion does not contend with the fact that the Ban is void, notwithstanding his predecessor's opinion to that effect, which he fails to acknowledge entirely. Instead, he merely cites *Dobbs*, as though that is all he must do to prevail, and directly suggests as much with his citations to *California ex rel. Becerra v. EPA*, 978 F.3d 708 (9th Cir. 2020) and *Agostini v. Felton*, 521 U.S. 203 (1997). *See* Mot. 3–4. But contrary to his implications, neither *Becerra* nor *Agostini* stand for the proposition that a mere change of law, standing alone, necessitates the reversal of an injunction under 60(b)(5) in all cases.

In *Becerra*, a district court entered a mandatory injunction requiring the Environmental Protection Agency (EPA) to promulgate a plan for implementation of landfill emissions guidelines in certain states within six months, because the EPA had missed the regulatory deadline it had set for itself for issuing that plan. 978 F. 3d. at 710–11. A few months later, the EPA finalized new regulations imposing a different, later regulatory timeline for the issuance of the plan. *Id.* at 711. Since the new regulations eliminated the affirmative legal duty that formed the basis for the injunction, the EPA filed a 60(b)(5) motion requesting relief from the district court's injunction, which was denied. *Id.* The EPA appealed, and the Ninth Circuit reversed the denial, holding that "once the legal basis for an injunction has been removed, *such that the law now permits what was previously forbidden*, it is an abuse of discretion to not modify the injunction." *Id*. at 717.

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **11** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 20 of 41

The Attorney General vastly overstates the significance of this holding. *Becerra* concerned a *mandatory* injunction to take affirmative steps to satisfy a regulatory duty that was subsequently repealed while the case was still ongoing—not a *prohibitory* injunction against the enforcement of a decades-old statute in a closed case. If anything, the Ninth Circuit's holding only underscores that, for purposes of Rule 60(b)(5), any "change in law" must also "warrant" the modification of the injunction by converting "what was previously forbidden" into something that is now permissible. *See id.* The Attorney General cannot satisfy this necessary condition— here, as set forth *supra*, what was previously forbidden (enforcing the Ban) *remains* forbidden irrespective of the legal change wrought by *Dobbs* because the Ban is otherwise null and void. In other words, because an "operative legal basis for imposing and maintaining an injunction," *id.*, continues to exist, prospective application of the injunction is warranted and equitable.

The Attorney General's reliance on *Agostini v. Felton*, Mot. 4, fares no better. There, the Supreme Court—*after* deciding to reverse its own precedent, which formed the basis of the original injunction—*went on* to determine "*whether* this change in law entitle[d] petitioners to relief under Rule 60(b)(5)." *Agostini*, 521 U.S. at 237. That change in law made what was previously forbidden—namely, sending public school teachers to provide remedial education in parochial schools—permissible. The Supreme Court was therefore "satisfied that what it ha[d] been doing [with the injunction] ha[d] been turned through changed circumstances into an instrument of wrong." *Id.* at 215 (quoting *Sys. Fed'n No. 91, Ry. Emps. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961)). Again, the same cannot be said here, where maintaining an injunction against a law that is otherwise void is not inequitable and far from an "instrument of wrong."[9]

---

[9] The inapposite post-*Dobbs* cases cited by the Attorney General, *see* Mot. 7, n.4, do not provide support for his position either. Seven of the eight cases he cites are not even 60(b)(5) cases; half of the cases concerned the dissolution of *preliminary*—not *final*—relief. Even the sole 60(b)(5) case, *June Medical Services LLC v. Phillips*, is readily distinguishable because the plaintiffs there did not oppose the 60(b) motion on the grounds that the law at issue was otherwise null and void, as Plaintiffs do here. *See* No. 14-525-JWD-RLB, 2022 WL 16924100 at *5–*6 (M.D. La. Nov. 14, 2022).

*Guam Society of OBGYNS v. Guerrero*; Civil Case No. 90-00013

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **12** of 32

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 21 of 41

Indeed, even if P.L. 20-134 were not void *ab initio*, the Attorney General would still not be able to show that keeping the injunction in place is inequitable. To the contrary, in urging this Court to lift the injunction, the Attorney General is inviting this Court to co-opt the legislative process and repeal decades of intervening abortion legislation. In effect, the Attorney General asks this Court to use an *earlier-in-time* Ban to implicitly repeal over three decades of *later-in-time* legislation regulating legal abortion. *See supra* at 3. This not only upends basic canons of statutory construction and exceeds this Court's authority,[10] but it is also what distinguishes this case from every other post-*Dobbs* Rule 60(b) motion relied upon by the movant. Mot. 7 n.4. *All* of the cases he cites concerned extremely recent statutes governing abortion in those states—not ancient bans that had been eclipsed by multiple, later-in-time statutes regulating abortion as lawful medical care. In other words, the Attorney General does not point to a single case where a court has exercised its equitable authority under Rule 60(b)(5) to hijack the legislative process in this way.[11]

As the Supreme Court has noted, local governments depend on "successor officials . . . to bring new insights and solutions to problems." *Horne*, 557 U.S. at 449. That is what the Guam legislature has done over the last three decades, in enacting a series of laws that together establish a comprehensive statutory framework for the provision of legal abortion, subject to certain requirements and limitations. *See supra* at 3; *see also* Governor Guerrero's Opp. to 60(b)(5) Mot.

---

[10] *Cf. Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329–30 (2006) (noting that "a court cannot use its remedial powers to circumvent the intent of the legislature").

[11] In fact, numerous courts have held just the opposite, and found that modern, post-*Roe* abortion legislation impliedly repealed earlier, unenforceable abortion bans. *See McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) (Texas statutes at issue in *Roe* that criminalized abortion were implicitly repealed by comprehensive set of subsequent provisions regulating legal abortion because "[t]here is no way to enforce both sets of laws"); *Weeks v. Connick*, 733 F. Supp. 1036, 1038–40 (E.D. La. 1990) (rejecting state's argument that "regulation of an activity is not inconsistent with the prohibition of it" and finding later statutes that made "abortions . . . permissible if set guidelines are followed" to have implicitly repealed earlier statutes prohibiting abortion); *see also* Governor Guerrero's Opp. to 60(b)(5) Mot. 25–27, ECF. 382.

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **13** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 22 of 41

("Gov. Opp.") 11–15, ECF No. 382. Thus, while Defendant Moylan may attempt to frame his push to revive the Ban as merely an effort to ensure that legislative intent is realized, it is anything but that. The 20th Guam Legislature could have included statutory language in the Ban stating that the Ban should be revived irrespective of other laws should *Roe* be overturned. But it did not. And, at any point between 1990 and 2022, the Guam Legislature could have amended any and all of the more-recent abortion statutes to provide they applied only so long as *Roe* remained good law, or to enact a trigger ban (as many U.S. states did) to ensure that Guam banned abortion upon a Supreme Court decision overturning *Roe*. *See, e.g.*, Tenn. Code Ann. § 39-15-213 (ban on abortion to take effect upon decision of the United States Supreme Court overruling, in whole or in part, *Roe*); Ark. Code Ann. § 5-61-301 to -304 (same); Ky. Rev. Stat. Ann. § 311.772(2)(a) (same). It did not. The Attorney General cannot ask this Court to use Rule 60(b)(5) to enact a trigger ban that the Guam Legislature never did.[12]

\* \* \*

In sum, this Court should deny the Attorney General's motion based on his inability to show that it would be inequitable to continue an injunction against an over three-decade-old law that was void *ab initio* and that, if revived, would have the effect of repealing multiple, later-in-time, duly enacted statutes. To the contrary, resurrecting an invalid law and, in so doing, permitting the Attorney General to effectively nullify three decades of intervening legislation regulating legal abortion would be "inequitable" and contrary to the public interest. Respect for the principle of finality, separation of powers, and the role of the current legislature all compel denial of the motion. *See Rousseau*, 985 F.3d at 1098–99 (district court was permitted to

---

[12] Any argument that vacatur of the permanent injunction would merely "return . . . the authority to decide" the question of abortion "to the people of Guam and their elected representatives," Mot. 5 n. 3, by enabling the people of Guam to vote by referendum on the Ban is belied by the language of the Ban's "Abortion Referendum" provision, which sets out *specific* dates for the occurrence of a referendum (and potential repeal) that have long since passed. *See* P.L. 20-134 § 7 (setting referendum election for *November 6, 1990* and potential repeal date for *December 1, 1990*).

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **14** of 32

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 23 of 41

consider the impact on the public interest of modifying final relief compared to keeping it in place when ruling on a 60(b)(5) motion).

However, notwithstanding the above, given the additional local law issue raised by the Governor, Plaintiffs do not oppose the Governor's request to abstain from ruling on the 60(b)(5) motion and stay this case until after the Guam Supreme Court has answered the question of whether the Ban itself has been impliedly repealed. *See* Gov. Opp. 11–27; Mot. for Abstention, ECF No. 368; GSC Order. In the event this Court abstains, Plaintiffs respectfully request that they be permitted further briefing on the impact of any final decision of the Guam Supreme Court in *In re Request of Guerrero* on this Court's resolution of the 60(b)(5) motion.

### B. The Attorney General's Proposal to Vacate the Injunction in Its Entirety Is Not Suitably Tailored to the Change in Law Created by *Dobbs*.

Even if the Attorney General had met his burden of showing that "a significant change" in law "warrants revision" of the injunction to some extent, he still cannot make the necessary showing that his requested relief is "suitably tailored to the changed circumstance." *See Bellevue*, 165 F.3d at 1255. After a court has determined that modification of a final judgment is warranted based on changed circumstances, "the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances. A court should do no more, for . . . a final judgment . . . may be reopened only to the extent that equity requires." *Rufo*, 502 U.S. at 391. Furthermore, as the Supreme Court has made clear, any proposed modification under 60(b)(5) "must not create or perpetuate a constitutional violation." *Id*.

Here, multiple sections of the Ban remain unconstitutional, or at the very least have unconstitutional applications, notwithstanding *Dobbs*, such that lifting the injunction per the Attorney General's request would "create [and] perpetuate" violations of Plaintiffs' and their

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **15** of 32

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 24 of 41

patients' constitutional rights.[13] *Rufo*, 502 U.S. at 391. Accordingly, the Attorney General cannot satisfy his burden of showing the requested relief is "suitably tailored," and his motion should be denied on this ground as well.

### i. Section 5's Prohibition on Solicitation Is Unconstitutionally Overbroad.

Section 5 provides that "[e]very person who solicits any woman to submit to any operation, or to the use of any means whatever, to cause an abortion . . . is guilty of a misdemeanor." P.L. 20-134 § 5. Even after *Dobbs*, Section 5 captures significant swathes of protected speech, far beyond the bounds of any of the narrowly defined categories of speech that the Supreme Court has exempted from First Amendment protection. Because Section 5 sweeps in a "substantial amount of protected speech"—including speech about legal abortion, speech lacking any intent to cause an illegal abortion, and speech abstractly advocating for abortion—it is unconstitutional on its face and must remain enjoined. *United States v. Williams*, 553 U.S. 285, 292 (2008).

The "constitutionality" of Section 5 "hinges on how broadly it is construed." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The Attorney General's discussion, Mot. 10–13, foregoes this critical "first step." *Williams*, 553 U.S. at 293 ("The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."). Rather than addressing the express language of Section 5, the Attorney General conflates Section 5 with Section 4 (discussed *infra* I.B.ii) by

---

[13] While Plaintiffs focus on Sections 4 and 5 of the Ban, they note (as this Court has already acknowledged) that the vague and undefined terms contained within Section 2's narrow life and health exception— including "practice independently of each other," "reasonably determine using all available means," "substantial risk," "gravely impair," and "adequately equipped medical clinic"—"undoubtedly raise due process questions." *Ada*, 776 F. Supp. at 1428 n.7. The vagueness issues presented by Section 2—which also survive *Dobbs*—reinforce Plaintiffs' position that the Attorney General's requested relief will "perpetuate a constitutional violation," *Rufo*, 502 U.S. at 391, and therefore is not suitably tailored to the change in law.

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **16** of 32

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 25 of 41

describing *both* as "prohibit[ing] . . . the *act* of solicitating the *means* to obtain an illegal abortion—either by soliciting *and the taking* of medicine, drugs, or other substance, or by soliciting *and submitting* to any operation—*with the intent to cause an abortion*." Mot. 12 (emphases in original). But this description merely parrots the language of Section 4 alone, when the reality is that the language of the sections are markedly different. *See* P.L. 20-134 § 4 ("Every woman who solicits of any person any medicine . . . and takes the same, or who submits to any operation . . . with intent thereby to cause an abortion . . . is guilty of a misdemeanor."). On this false premise, the Attorney General concludes that, with regard to Sections 4 *and* 5, "[w]hat is criminalized here is neither speech nor advocacy, but intentional acts in pursuit of a crime." Mot. 12.

In fact, in stark contrast to Section 4, Section 5 criminalizes pure speech, not just speech "that is intended to induce or commence illegal activities." *See Williams*, 553 U.S. at 298. It prohibits people, including Plaintiffs, from using words that "solicit[] any woman to submit to any operation, or to the use of any means whatever, to cause an abortion." P.L. 20-134 § 5; *see Solicitation*, Black's Law Dictionary (11th ed. 2019) (defining "solicitation" as the "offense of urging, advising, commanding, or otherwise inciting another to commit a crime"). Critically, *no* act, let alone an intentional act, is necessary to prosecute someone under these terms. *See id.* ("Solicitation is an inchoate offense distinct from the solicited crime."). Nor is intent "to cause an abortion," even with respect to the soliciting speech, required on the face of Section 5. All that is required to trigger enforcement is speech, and nothing more, about "the use of any means whatever, to cause an abortion." *See* P.L. 20-134 § 5.

While there are certain discrete categories of speech that the Supreme Court has exempted from First Amendment protection, speech about abortion is not one of them. *See, e.g.*, *Stevens*, 559 U.S. at 468–69 (listing obscenity, defamation, fraud, incitement, and speech integral to

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **17** of **32**

Case 1:90-cv-00013    Document 391    Filed 03/08/23    Page 26 of 41

criminal conduct as the categories of unprotected expression). To be sure, the "constitutional freedom for speech" does not "extend[] its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney*, 336 U.S. at 498. Thus, Guam may constitutionally regulate speech that intentionally solicits criminal acts, including the act of "submit[ting]" to an abortion, if abortion is criminalized in Guam. *See, e.g.*, *Williams*, 553 U.S. at 297. But it is not enough that Section 5 uses the word "solicits"; for speech to constitute solicitation falling outside First Amendment protection, "the intent of the actor and the objective meaning of the words" must be "so close in time and purpose to a substantive evil as to become part of the ultimate crime itself." *Freeman*, 761 F.2d at 552. Should this Court determine that the Ban may make "submitting to an abortion" a crime, it must still separately consider whether Section 5 narrowly and constitutionally prohibits *only* speech integral to that crime.

As detailed below, Section 5 cannot be so construed—its speech restrictions extend into many core areas of protected speech, rendering "a substantial number of its applications . . . unconstitutional." *Stevens*, 559 U.S. at 473. First, Section 5's text does not require an actual underlying crime, the sine qua non of criminal solicitation, and it therefore criminalizes speech about *legal* abortion. Second, Section 5 does not require that the speaker have specific *intent* to solicit an illegal abortion, an element critical to a criminal solicitation conviction. Third, Section 5 sweeps within its ambit "the abstract advocacy" of abortion, which falls well within constitutional bounds. *Williams*, 553 U.S. at 298–99. Thus, Section 5 is unconstitutionally overbroad because it criminalizes a substantial amount of speech that does not constitute criminal solicitation and does not fall under any other category of speech exempted from First Amendment protection.

**1. Section 5 Criminalizes Speech About Legal Abortion.**

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **18** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 27 of 41

Section 5's reach is not limited to speech soliciting illegal abortion in Guam. By its plain terms, Section 5 punishes speech soliciting an abortion wherever it may occur. *See* P.L. 20-134 § 5. The definition of "abortion" in Section 2 of the Ban also offers no jurisdictional limitation or other limiting construction. *Id.* § 2. Thus, on its face, Section 5's prohibition of speech soliciting "the use of any means whatever, to cause an abortion," applies even where the speech concerns an abortion outside of Guam, including in a jurisdiction, like Hawai'i, where abortion is legal.

Speech soliciting a legal act falls outside the First Amendment exception for speech integral to criminal conduct. *See Williams*, 553 U.S. at 289 ("[S]olicitation . . . criminalize[s] speech . . . that is intended to induce or commence *illegal activities*."); *Freeman*, 761 F.2d at 552 ("[W]here speech becomes an integral part of *the crime*, a First Amendment defense is foreclosed . . . ."). *Dobbs* did not "prevent the numerous states that readily allow abortion from continuing to readily allow abortion." 142 S. Ct. at 2305 (Kavanaugh, J., concurring); *see also* Guttmacher Inst., *Interactive Map: U.S. Abortion Policies and Access After Roe*, Mar. 5, 2023, *available at* https://states.guttmacher.org/policies/ (abortion legal—at least up to first trimester—in over 30 states). Nor, did *Dobbs* give states or territories that ban abortion the power to prevent their residents from traveling to another jurisdiction where abortion is legal to obtain those services. *See infra*; *see also Dobbs*, 142 S. Ct. at 2309 (Kavanaugh, J., concurring) ("[M]ay a State bar a resident of that State from traveling to another State to obtain an abortion? In my view, the answer is no based on the constitutional right to interstate travel."); *accord Saenz v. Roe*, 526 U.S. 489, 498 (1999) (The "constitutional right to travel from one State [or territory] to another is firmly embedded in our jurisprudence."). Guam therefore cannot, "under the guise of exercising internal police powers," bar speech soliciting "activity that is legal" in another jurisdiction. *Bigelow v. Virginia*, 421 U.S. 809, 824–25 (1975).

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **19** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 28 of 41

Plaintiff Freeman and Proposed Intervenors illustrate the real-world chilling consequences of Section 5 on protected speech. For example, Drs. Shandhini Raidoo and Bliss Kaneshiro provide abortion care to Guam residents who travel to Hawaiʻi, and regularly advise patients located in Guam about their pregnancy options, including abortion, and—for those interested in that option—about their ability to obtain an abortion in Guam *or* Hawaiʻi. *See* Kaneshiro Decl. ¶¶ 9, 28–31, 37, 45–47; Raidoo Decl. ¶¶ 9, 28–31, 36, 44–46. Likewise, while Dr. Freeman no longer provides abortion care in Guam, he does still see pregnant patients in Guam, and sometimes counsels these patients about abortion as an option and refers them outside of Guam for abortion care. Freeman Decl. ¶ 3. If the Ban were to take effect, Drs. Freeman, Raidoo, and Kaneshiro want to continue to advise their Guam-based patients, where appropriate, about their pregnancy options and ability obtain abortion care outside of Guam, where abortion is legal. *See* Kaneshiro Decl. ¶¶ 38, 44–51; Raidoo Decl. ¶¶ 37, 44–50; Freeman Decl. ¶ 4. However, Section 5 of the Ban appears to criminalize this otherwise protected speech because, on its face, this provision recognizes no distinction between speech soliciting an abortion in Guam and elsewhere. Should this Court lift the injunction against Section 5, Drs. Freeman, Raidoo, and Kaneshiro fear they may be prosecuted for engaging in and continuing their constitutionally protected speech advising pregnant patients in Guam about their ability to seek legal abortions in Hawaiʻi. Kaneshiro Decl. ¶¶ 38, 44–51; Raidoo Decl. ¶¶ 37, 44–50; Freeman Decl. ¶ 4.

These concerns are not speculative, nor are they limited to Plaintiff Freeman and Proposed Intervenors. Indeed, during the short time that the Ban was in effect, then-Attorney General of Guam Barrett-Anderson charged one of the original attorneys in this case, Janet Benshoof, under Section 5 for "publicly encourag[ing] women seeking abortions on Guam to have the abortion and travel to Honolulu, Hawaii" simply by "g[iving] a telephone number which women traveling to Honolulu to have abortions should call" during a public speech. *See* Mem. of P. & A. Supp.

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **20** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 29 of 41

Pls.' Mot. for Summary Judgment, 12 n.14, ECF No. 120. Attorney General Barrett-Anderson also issued a Memorandum to the Chief of Police characterizing the solicitation prohibition as "prevent[ing] a medical professional or *any other person* from recommending to a woman that she seek an abortion *in a location other than Guam* by making such recommendation a crime." Second Amended Compl., ECF No. 154, Ex. B. The Memo and Ms. Benshoof's case only underscore that the plain language of Section 5 threatens to criminalize not only the Plaintiff and Proposed Intervenors' speech, but the speech of *all* individuals who might refer pregnant people in Guam to seek abortion in jurisdictions where it is legal—speech about a legal act, which is subject to First Amendment protection and cannot be the basis for a solicitation conviction.

### 2. Section 5 Criminalizes Speech Absent Specific Intent to Solicit Illegal Abortion.

Section 5 also criminalizes speech without requiring that the speaker specifically intend to solicit an illegal abortion. Its scope therefore bleeds significantly beyond that of criminal solicitation, for which intent is an indispensable element. *See Williams*, 553 U.S. at 298; *Freeman*, 761 F.2d at 552 (describing solicitation as speech where "*the intent of the actor* and the objective meaning of the words used are so close in time and purpose to a substantive evil as to become part of the ultimate crime itself"). Mere knowledge or even anticipation that, following the speech, the person may then go on to commit a crime is not sufficient. *See Conant v. Walters*, 309 F.3d 629, 638 (9th Cir. 2002) (rejecting government's argument that "a doctor's 'recommendation' of marijuana may encourage illegal conduct by the patient"); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.").

Both the plain language of Section 5 and the structure of the Ban evince the lack of an intent requirement. To start, Section 5 is silent concerning the *mens rea* required for a violation.

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **21** of **32**

Case 1:90-cv-00013    Document 391    Filed 03/08/23    Page 30 of 41

By contrast, every other criminal proscription enumerated in the Ban expressly includes an intent requirement. *See* Section 3 (criminalizing provision of medicine or use of any means "*with intent* thereby to cause an abortion*"); Section 4 (criminalizing solicitation and taking of medicine and submitting to use of any means "*with intent* thereby to cause an abortion"). And while "silence on this point by itself does not necessarily suggest that [the legislature] intended to dispense with a conventional *mens rea* element," an "indication of [legislative] intent, express or implied" can demonstrate such intention. *Staples v. United States*, 511 U.S. 600, 606 (1994). Here, the structure of the Ban as a whole and the absence of similar intent language in Section 5—whose structure otherwise closely tracks that of Sections 3 and 4—provide just such indication of the legislature's intent. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where [the legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion." (alteration omitted)).[14]

Plaintiff Freeman and Proposed Intervenors again demonstrate the concrete chilling effect Section 5 will have on protected speech. Drs. Freeman, Kaneshiro, and Raidoo sometimes advise their Guam patients about their range of pregnancy options, including abortion, without any specific intent that those patients actually obtain an abortion. Freeman Decl. ¶ 3; Raidoo Decl. ¶¶ 44–49; Kaneshiro Decl. ¶¶ 45–50. Because Section 5 lacks an intent requirement, Plaintiff Freeman and Proposed Intervenors fear that, if it takes effect, they may be prosecuted for merely advising their patients of their pregnancy options—speech that is fundamental to their practice of medicine and at the core of the doctor-patient relationship—if a patient subsequently obtains an

---

[14] Section 5's silence on *mens rea* cannot be remedied by importing the intent requirement in Guam's general solicitation provision, which applies only to "solicitation *to commit a felony*," 9 G.C.A. § 13.20 cmt. ("It should be noted that this Section does not make criminal a solicitation to commit a misdemeanor or petty misdemeanor"). By contrast, Section 5 criminalizes the solicitation of a pregnant person to obtain an abortion, where the underlying "crime" of obtaining an abortion is a *misdemeanor*. P.L. 20-134 §§ 4, 5.

*Guam Society of OBGYNS v. Guerrero*; Civil Case No. 90-00013

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page 22 of 32

Case 1:90-cv-00013    Document 391    Filed 03/08/23    Page 31 of 41

illegal abortion in Guam. *See* Freeman Decl. ¶ 3; Raidoo Decl. ¶¶ 44–49; Kaneshiro Decl. ¶¶ 45–50.

In other cases, the doctors may go further, and include abortion as a recommended option for certain patients, while still harboring no intention that their patients obtain an *illegal* abortion. *See, e.g.*, Kaneshiro Decl. ¶¶ 45, 48. Again, because Section 5 contains no intent requirement, there is a serious risk that those tasked with enforcement could view the mere inclusion of abortion as a recommended option to be a criminal act of "solicitation" under Section 5 and seek to prosecute the Plaintiff and Proposed Intervenors, as well as other health care providers who interact with pregnant patients in Guam. This would directly violate their First Amendment rights. Indeed, in an analogous context, the Ninth Circuit held that the First Amendment protects a doctor's recommendation of marijuana as a treatment for certain medical conditions, even where the recommendation might lead the patient to unlawfully obtain marijuana. *Conant*, 309 F.3d at 635–39.[15] The court explained that, while the First Amendment would not protect a doctor's recommendation of marijuana, "[i]f, in making the recommendation, the physician intends for the patient to use it as the means for obtaining marijuana," *id.* at 635, "[h]olding doctors responsible for whatever conduct the doctor could anticipate a patient *might* engage in after leaving the doctor's office is simply beyond the scope of" any exception to the First Amendment, *id.* at 636. Prohibiting speech recommending abortion as an option that, in Section 5's words, might "cause" a patient to obtain an illegal abortion, without any specific intent to lead to such a result, would similarly extend beyond constitutionally permitted speech restrictions.

### 3. Section 5 Criminalizes Abstract Advocacy of Abortion.

---

[15] The *Conant* court primarily analyzed the speech at issue through an aiding-and-abetting lens. However, because the government argued that "a doctor's 'recommendation' of marijuana may encourage illegal conduct by the patient," the court also addressed whether this speech could constitute solicitation. 309 F.3d at 638–39. It concluded that "the potential harms were too attenuated from the proscribed speech" to permit punishment of the speech. *Id.*

*Guam Society of OBGYNS v. Guerrero*; Civil Case No. 90-00013

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion      Page **23** of **32**

Case 1:90-cv-00013    Document 391    Filed 03/08/23    Page 32 of 41

Section 5 also captures within its ambit protected abstract advocacy in favor of abortion. In *Williams*, the Supreme Court drew a line in the sand, recognizing "an important distinction between a proposal to engage in illegal activity and the abstract advocacy of illegality." 553 U.S. at 298–99. This distinction between unprotected solicitation and protected abstract advocacy turns principally on whether the speech bears some specific relationship to the criminal act by, *e.g.*, describing a particular piece of contraband, a specific victim, or a specific place or time. Thus, in *Williams*, the Court explained that prohibiting speech "recommend[ing] . . . *a particular piece of purported child pornography* with the intent of initiating a transfer" falls within the First Amendment exception for criminal solicitation. 553 U.S. at 300; *see also Freeman*, 761 F.2d at 552 (distinguishing "statements that, at least arguably, were of abstract generality" from "*advice to commit a specific criminal act*"). By contrast, the Court clarified that statements advocating in favor of illegal activity—*e.g.*, "I believe that child pornography should be legal"—or even arguing in general terms that a listener should violate the law—*e.g.*, "I encourage you to obtain child pornography"—are protected speech that do not constitute punishable solicitation. *Williams*, 553 U.S. at 300.

On its face, Section 5 lacks any requirement that the prohibited speech advocate in some specific way for an illegal abortion. Take, for instance, the statement: "I encourage you to obtain an abortion, if that is the right choice for you." This statement falls within the heartland of protected abstract advocacy identified by the Court in *Williams*. And yet, it is criminalized under the plain terms of Section 5.

The Attorney General asserts that "[n]othing" in Section 5 "criminalize[s] advocacy in the abstract, nor general discussion." Mot. 12. But in support of that position, he looks only to Section 4, which he describes as criminalizing "neither speech nor advocacy, but intentional acts in pursuit of a crime." *Id*. As explained above, Section 5 does indeed criminalize pure speech and its

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **24** of **32**

Case 1:90-cv-00013    Document 391    Filed 03/08/23    Page 33 of 41

criminalization of pure speech captures abstract advocacy. The Attorney General, by failing to construe or otherwise examine Section 5, offers no argument to the contrary.

Here, Proposed Intervenor Famalao'an Rights engages in precisely the sort of protected abstract advocacy captured by Section 5. Famalao'an Rights uses its social media presence to express zealous support for expanding safe, legal access to abortion to its thousands of followers. Famalao'an Rights' members speak to the media in favor of abortion as an important reproductive health option for pregnant people. *See* Mot. to Intervene, Ex.5, Decl. of Stephanie Lorenzo ("Lorenzo Decl.") ¶¶ 22–23, 27–28. And Famalao'an Rights has organized public protests at numerous key moments when access to abortion was in jeopardy. *Id.* ¶¶ 22, 25–26. Given Section 5's proscription against abstract advocacy for abortion, Famalao'an Rights fears they may be prosecuted for continuing their constitutionally protected advocacy should the Court lift the injunction against Section 5. *Id.* ¶¶ 30, 36–37. Likewise, Drs. Kaneshiro and Raidoo both speak to the media and advocate for abortion access on Guam. *See* Kaneshiro Decl. ¶ 51; Raidoo Decl. ¶ 50. Given Section 5's proscription of abstract advocacy for abortion, Proposed Intervenors Famalao'an Rights and Drs. Kaneshiro and Raidoo fear they may be prosecuted for continuing their constitutionally protected advocacy should the Court lift the injunction against Section 5. Lorenzo Decl. ¶¶ 36–37; Kaneshiro Decl. ¶ 51; Raidoo Decl. ¶ 50.

\* \* \*

In sum, Section 5 "prohibits a substantial amount of protected speech," and this overbreadth is "*substantial*, not only in an absolute sense, but also relative to the statute's" narrowly "legitimate sweep." *Williams*, 553 U.S. at 292–93 (emphasis in the original). Indeed, even if Section 5 were not unconstitutionally overbroad, lifting the injunction in its entirety would still not be suitably tailored, and an as applied injunction would be warranted. That is because, as detailed above, Section 5 is—at the very least—unconstitutional as applied to Plaintiff and

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **25** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 34 of 41

Proposed Intervenors, as it criminalizes their speech on the basis of content and viewpoint, and that speech does not fall under any of the narrow exceptions to the First Amendment. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Minn. Voters All. v. Mansky*, 138 S.Ct. 1876, 1885 (2018) ("[R]estrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited."); *Ashcroft v. Am. Civ. Liberties Union*, 542 U.S. 656, 660 (2004) ("Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people."). But this Court need not reach this question because Section 5 criminalizes so many different swathes of protected speech, there is no "limiting construction" that "could be placed on the challenged statute." *See Broadrick v. Oklahoma*, 413 U.S. 601, 614 (1973). Any attempt to limit the statute to proscribe only criminal solicitation would require fundamentally rewriting the law, which the courts cannot do. *See Stevens*, 559 U.S. at 481. As such, Section 5 remains facially invalid; because Attorney General Moylan cannot show that lifting the injunction as to Section 5 is suitably tailored, it must also remain enjoined.

ii. **Section 4 Is Unconstitutional to The Extent It Prohibits Guam Residents from Obtaining Abortion Where Abortion Is Legal.**

Section 4 of the Ban states: "Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever with intent thereby to cause an abortion . . . is guilty of a misdemeanor." P.L. 20-134 § 4. Although the movant describes Section 4 as an "anti-solicitation" provision, *see* Mot. 10, the plain text of Section 4 does not criminalize *the speech* of the pregnant person, standing alone, but instead criminalizes *the act* of obtaining an abortion.[16] The statute makes it a crime for a

---

[16] Even if Section 4 were to be construed and applied as a solicitation provision, which its plain language belies, it would suffer from the same constitutional deficiency as Section 5 by capturing speech about legal abortion—namely, criminalizing the "solicitation" of abortion in jurisdictions where it remains legal—and therefore lifting the injunction against this provision in its entirety would still "perpetuate a constitutional violation." *Rufo*, 502 U.S. at 391.

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*
Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **26** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 35 of 41

woman to "**solicit**[] of any person any medicine, drug, or substance whatever, **and take[]** the same, **or** [to] **submit[]** to an operation, or to the use of any means whatever" with intent to cause an abortion. P.L. 20-134 § 4. On its face, Section 4 therefore criminalizes two types of acts: (1) **soliciting <u>and</u> taking** a substance with the intent to cause an abortion; and (2) **submitting** to a procedure with the intent to cause an abortion.[17] As to the first offense, the text is clear that *two* elements—the solicitation **and** the subsequent taking—are necessary for this Section to apply. In other words, Section 4 does not criminalize—and thus could not be used to prosecute—a pregnant person for pure speech soliciting an abortion, without attendant action (*e.g.*, if a pregnant person in Guam urged another person to provide them with medications to cause an abortion but never subsequently ingested them, she could not be prosecuted under Section 4).

Construing Section 4 in this manner reveals a significant constitutional infirmity. The plain text of Section 4 does not make clear that it applies only where the abortion actually occurs *on* Guam. Accordingly, just as Section 5 was previously interpreted by Guam's Attorney General to apply to speech concerning abortion outside Guam, there is a significant risk that Section 4 could be applied to criminalize a patient of Drs. Freeman, Raidoo, or Kaneshiro, or a member of Proposed Intervenor Famalao'an Rights, *see* Lorenzo Decl. ¶ 34, or any other Guam resident— for obtaining an abortion *anywhere*, including in places where abortion is legal (*e.g.*, Hawai'i).[18]

---

[17] Despite describing Section 4 as an "anti-solicitation" provision, the Attorney General later construes Section 4 in precisely this manner: "Section[] 4 . . . prohibit[s] . . . the *act* of solicitating the *means* to obtain an illegal abortion—either by soliciting *and the taking* of medicine, drugs, or other substance, or by soliciting *and submitting* to any operation—*with the intent to cause an abortion*. . . . What is criminalized here is neither speech nor advocacy, but intentional acts in pursuit of a crime." Mot. 12 (emphases in the original).

[18] Should the Court conclude that Section 4 is ambiguous as to its extraterritorial application, the broader reading is unconstitutional, and the Court should construe the statute to make clear that it has no application outside of Guam. *Cf. Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489 (4th Cir. 2007) ("By reaching this holding as a matter of statutory construction, we avoid constitutional problems inherent in a broader interpretation of South Carolina law," because the "principle that state laws may not generally operate extraterritorially is one of constitutional magnitude.").

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **27** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 36 of 41

To the extent Section 4 seeks to criminalize otherwise-lawful conduct outside of Guam, the Section imposes punishment for conduct "lawful where it occurred," in violation of the right to due process protected by the Fourteenth Amendment. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003); 48 U.S.C. § 1421b(u) (extending the second sentence of section 1 of the Fourteenth Amendment to Guam). The Supreme Court has made clear that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 573 n.19 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)); *State Farm*, 538 U.S. at 422 ("A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders . . . ."). More than a century ago, the Court considered whether one state could prosecute a person "for doing within the territorial limits of [one state] an act which [another] state had specially authorized him to do." *Nielsen v. Oregon*, 212 U.S. 315, 321 (1909). Emphasizing that "the opinion of the legislatures of the two states is different" as to whether the conduct at issue ought to be criminalized, the Court held in no uncertain terms that "for an act done within the territorial limits of [one state], under authority and license from that state, one cannot be prosecuted and punished by . . . [a different] state." *Id.* The Court echoed this conclusion in *Bigelow v. Virginia*, in which it held that Virginia could not criminalize the publication of an advertisement concerning the availability of abortion services in New York that were, at the time of publication and prosecution, illegal in Virginia but legal in New York. 421 U.S. at 824. The Court made clear that a "State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State." *Id*.

The Supreme Court has never receded from these conclusions. Indeed, in the 123 years since *Nielsen* was decided, the Court has not been asked to address the constitutionality of a state

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **28** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 37 of 41

or territorial law that imposed criminal penalties on someone for engaging in out-of-state conduct that was lawful in the jurisdiction where it transpires—owing, presumably, both to the settled nature of this law and the customary respect for the comity on which the federalist system depends. It has, however, considered similar questions in addressing whether a state may impose punitive damages on defendants for out-of-state conduct that was lawful in the jurisdictions where it occurred. And in repeatedly—and unequivocally—holding in this context that the Fourteenth Amendment's Due Process Clause prohibits a jurisdiction from punishing a defendant for engaging in out-of-jurisdiction activity that is permitted by the jurisdiction where it transpires, the Court has reaffirmed the basic principles animating *Nielsen* and *Bigelow*. *See BMW*, 517 U.S. at 572–73 (holding that while Alabama could punish BMW for engaging in unlawful behavior within that state, it would violate due process to punish a defendant for engaging in out-of-state conduct that was lawful in the place where it transpired); *State Farm*, 538 U.S. at 421 (holding that a punitive damages award against a defendant that accounted for the defendant's out-of-state behavior violated due process and reiterating that "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred").

These cases are controlling here, and together dictate that Section 4—to the extent it purports to criminalize a Guam resident for obtaining legal abortion in another state—is unconstitutional. Indeed, if the injunction against the Ban is lifted, Guam residents seeking abortion—including Plaintiff's and Proposed Intervenors' patients and/or members—will have no option but to leave Guam and travel to place where abortion is legal (*e.g.*, Hawaiʻi) to obtain care. As the Supreme Court made clear in *Nielson*, Guam cannot "disregard [the] authority [of another state], practically override the legislation of [that state], and punish [people] for doing within the territorial limits of [that state] an act which that state had specially authorized [them] to do." 212 U.S. at 321. To put it another way, Guam "'does not acquire power or supervision

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page **29** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 38 of 41

over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State.'" *State Farm*, 538 U.S. at 421 (quoting *Bigelow*, 421 U.S. at 824); *BMW*, 517 U.S. at 571 n.16 (same). Given this, to the extent Section 4 would prohibit Guam residents from obtaining abortion care in jurisdictions where it is legal, it flouts due process limits on extraterritorial punishment and must be enjoined.[19]

\* \* \*

In sum, given the constitutional infirmities that persist irrespective of *Dobbs*, lifting the injunction in its entirety would "create [and] perpetuate" constitutional violations. *Rufo*, 502 U.S. at 391. Accordingly, this Court should deny the Attorney General's motion for failure to satisfy his burden of showing that his proposed modification is "suitably tailored" to the changes wrought by *Dobbs*. However, even if this Court were inclined to grant the motion in part, this Court must modify the permanent injunction to prohibit enforcement of the unconstitutional Sections of the Ban and/or unconstitutional applications of those Sections, as detailed above. *See id.* ("a final judgment . . . may be reopened *only* to the extent that equity requires"); *see also United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions.").[20]

---

[19] Given the heightened risk of prosecution of Guam residents who maintain a presence in Guam and return to Guam after receiving abortions, the foregoing analysis is focused on Section 4. However, the same legal principles are applicable to Section 3, to the extent it purports to criminalize the *provision* of abortion outside of Guam. Proposed-Intervenors Drs. Raidoo and Kaneshiro would, if the Ban takes effect, continue to provide abortion care to Guam residents who travel to Hawaiʻi to abortion. Raidoo Decl. ¶¶ 41–42; Kaneshiro Decl. ¶¶ 42–43. Drs. Raidoo and Kaneshiro are licensed by the state of Hawaiʻi; the facilities where they would treat Guam patients are located in Hawaiʻi; and the medical care they would provide would occur in Hawaiʻi. Thus, if Guam were to prosecute them for providing this care in Hawaiʻi, it would violate fundamental principles due process. *See supra*. Accordingly, if this Court does not deny the Attorney General's motion altogether and instead modifies the injunction, it must also enjoin the enforcement of Section 3 as applied to abortion care provided outside of Guam in states or localities where it is legal.

[20] As explained above, the movant has not met his burden under Rule 60(b)(5), including, *inter alia*, because his request to vacate the injunction in its entirety is plainly improper. Accordingly, his motion should be denied. However, if this Court is not inclined to deny the motion altogether, but instead to grant it in part and modify the injunction, Plaintiffs request the opportunity to submit an appropriate proposed order for the Court's consideration.

*Guam Society of OBGYNS v. Guerrero*; Civil Case No. 90-00013

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion     Page 30 of 32

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 39 of 41

**CONCLUSION**

"[T]his Court need not re-open a case" each and "[e]very time the law evolves and matures." *MKB Mgmt. Corp. v. Wrigley*, No. 1:13-CV-071, 2022 WL 17734408, at *3 (D.N.D. Nov. 17, 2022). Indeed, "[t]he floodgates of litigation would open far and wide if parties were allowed to re-open previously closed cases in every instance where laws may have changed or evolved with the passage of time." *Id*. Because the Attorney General has failed to satisfy his burden of proving that an exception to the important principle of finality is warranted under 60(b)(5), Plaintiffs respectfully request that this Court deny his motion.

Dated this 8th day of March, 2023

By: /s/ *Anita P. Arriola*
Anita P. Arriola, Esq.
*Attorney for Plaintiff and*
*Proposed Intervenors*

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion    Page **31** of **32**

Case 1:90-cv-00013   Document 391   Filed 03/08/23   Page 40 of 41

## CERTIFICATE OF SERVICE

I, Anita P. Arriola, declare under penalty of perjury that on March 8, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court of Guam, and to be served upon registered parties, using the CM/ECF system.

Defendant Arthur U. San Agustin has been served via hand-delivery, as well as via service to Leslie A. Travis, attorney for Defendant Governor Guerrero, who I understand Mr. Agustin has agreed may accept service in this matter on his behalf.

Executed this 8th day of March, 2023

By: /s/ Anita P. Arriola_____
Anita P. Arriola, Esq.
*Attorney for Plaintiff and
Proposed Intervenors*

*Guam Society of OBGYNS v. Guerrero; Civil Case No. 90-00013*

Plaintiff and Proposed Intervenors' Opposition to Defendant Attorney General Moylan's Rule 60(b)(5) Motion