**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GUAM SOCIETY OF OBSTETRICIANS AND GYNECOLOGISTS; GUAM NURSES ASSOCIATION; MILTON H. COLE, Jr., Reverend; LAURIE KONWITH; EDMUND A. GRILEY, M.D.; WILLIAM S. FREEMAN, M.D.; JOHN DUNLOP, M.D., on behalf of themselves and all others similarly situated, | No.23-15602 |
| | D.C. No. 1:90-cv-00013 |
| *Plaintiffs-Appellees*, | ORDER |
| v. | |
| DOUGLAS B. MOYLAN, in his official capacity as Attorney General of Guam, | |
| *Defendant-Appellant*, | |
| v. | |
| LOURDES LEON GUERRERO, in her official capacity as Governor of Guam; ARTHUR U. SAN AGUSTIN, MHR, in his official capacity as Director of the Department of Public | |

Health and Social Services; LILLIAN
PEREZ-POSADAS, M.N., R.N., in
her official capacity as Administrator
of the Guam Memorial Hospital;
ALICE M. TAIJERON, in her official
capacity as member of the Guam
Election Commission; GERARD C.
CRISOSTOMO, "Jerry", in his official
capacity as member of the Guam
Election Commission; G. PATRICK
CIVILLE, in his official capacity as
member of the Guam Election
Commission; JOSEPH P. MAFNAS,
in his official capacity as member of
the Guam Election Commission;
ANTONIA R. GUMATAOTAO,
"Toni", in her official capacity as
member of the Guam Election
Commission; CARISSA E.
PANGELINAN, in her official
capacity as member of the Guam
Election Commission; BENNY A.
PINAULA, in his official capacity as
member of the Guam Election
Commission,

*Defendants-Appellees.*

Filed February 3, 2026

Before:  A. Wallace Tashima, John B. Owens, and Roopali
H. Desai, Circuit Judges.

Order;
Statement by Judge VanDyke

## SUMMARY*

### Mootness

The panel denied a petition for panel rehearing and a petition for rehearing en banc of the panel's order dismissing this appeal as moot in light of *In Re Leon Guerrero*, 2023 Guam 11 (Guam Oct. 31, 2023).

Regarding the denial of rehearing en banc, Judge VanDyke wrote that the panel made the right call in dismissing the appeal on mootness grounds after the Supreme Court of the Territory of Guam declared—as a matter of local law—that Public Law 20-134, which bans abortion, no longer possesses any force or effect in Guam. He wrote the statement to flesh out two consequences of that conclusion. First, the current permanent injunction against the enforcement of Public Law 20-134 would not restrain Guam from enforcing any future abortion ban should Guam lawmakers choose to enact one. Second, while *Roe v. Wade*, 410 U.S. 113 (1973), may no longer have a *doctrinally binding* effect in the federal courts, there are many ways it continues to have a momentous *practical* effect on the law and culture as it exists today. Even though *Roe* itself is mercifully gone, it remains

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the fact that it is because of *Roe* that abortion is legal today in Guam.

---

## ORDER

Judges Owens and Desai have voted to deny the petition for panel rehearing and petition for rehearing en banc. Judge Tashima did not participate in this petition.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 40.

The petition for panel rehearing and the petition for rehearing en banc are denied.

Judge VanDyke's statement regarding the denial of rehearing en banc is filed concurrently herewith.

---

VANDYKE, Circuit Judge, statement regarding the denial of rehearing en banc:

As prominent jurists have memorably emphasized— perhaps more aspirationally than descriptively—our role as judges should be as umpires, not players, merely "calling balls and strikes." But what happens when, for fifty years, the strike zone for one team spans the 17-inch width of home plate, but the umpires call the strike zone for its division rival as spanning the entire diameter of the stadium? If—at the end of those fifty years—the umpires correct course and

define the strike zone consistently (and fairly) for both teams, is that enough to rectify five decades of unfairness? Does simply judicially fixing the long-broken rule fully address a half-century of a judicially skewed playing field?

Often not, and this case vividly illustrates at least one example of why. The Territory of Guam enacted an abortion ban decades ago in 1990. But *Roe v. Wade*, 410 U.S. 113 (1973), wrongly compelled that every pitch against a pro-life legislature was a strike, so Guam's ban (which would be over thirty-five years old today) survived just a few short days before the federal district court in Guam permanently enjoined its enforcement. Eventually, fifty years post-*Roe*, the Supreme Court corrected course and narrowed the strike zone against state and territorial governments. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). But by the time Guam's current attorney general, Douglas Moylan, asked our court to instruct the district court to dissolve the permanent injunction so that he could enforce the ban, it was too late—the ban had been, according to the Supreme Court of the Territory of Guam, impliedly repealed by subsequent pro-life legislation passed in the shadow of *Roe* and its progeny. A panel of our court dismissed the appeal on mootness grounds. That was the right call. But that conclusion has consequences, and I write this statement to flesh them out.

The wages of *Roe*'s judicial misconduct on unborn life and the rule of law are not merely incalculable, they are ongoing. While *Roe* may no longer have a *doctrinally binding* effect in the federal courts, there are many ways it continues to have a momentous *practical* effect on the law and culture as it exists today. If *Roe* had never happened, abortion would have been illegal in Guam in 1990, and it would almost certainly still be illegal in Guam today. Even

though *Roe* itself is mercifully gone, it remains the fact that it is because of *Roe* that abortion is legal today in Guam.

## I.

Until the 1960s, abortion was, with few exceptions, criminally prohibited throughout the United States. Linda Greenhouse & Reva Siegel, Before *Roe v. Wade*: Voices that Shaped the Abortion Debate before the Supreme Court's Ruling 3 (2d ed. 2012); *see also Dobbs*, 597 U.S. at 241. In the 1962 Model Penal Code, even the American Law Institute (not exactly a right-wing advocacy group) prescribed abortion-performance as a felony, with limited exceptions. *See* Model Penal Code § 230.3 (A.L.I., Proposed Official Draft 1962). As late as 1973, thirty states "prohibited abortion at all stages except to save the life of the mother." *Dobbs*, 597 U.S. at 249 (citing *Roe*, 410 U.S. at 118).

That all changed on January 22, 1973—the day that the Supreme Court of the United States issued its opinion in *Roe*. There, a majority of the Justices found a constitutional right to abortion because they, in their words, "fe[lt]" that the "Fourteenth Amendment's concept of personal liberty" contained a "right of privacy." 410 U.S. at 153. And that "right of privacy," according to the *Roe* Court, was "broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Id.* To be sure, the *Roe* Court declared that the right to abortion it had discovered was not absolute—a state could regulate post-first-trimester abortions to "preserv[e] and protect[] … maternal health." *Id.* at 163. And a state could go as far as to proscribe abortion to protect unborn life after the point of so-called fetal "viability," the point at which, the Court decreed, an unborn child first "has the capability of meaningful life

outside the mother's womb." *Id.* at 163. But even post-viability, states were required to legalize abortions "necessary to preserve the life or health of the mother." *Id.* at 164. In an opinion issued the same day, the Court defined "health" so broadly that pretty much *any* elective abortion at any time during pregnancy could fall under the mandatory "health" exception. *See Doe v. Bolton*, 410 U.S. 179, 192 (1973) ("We agree with the District Court that the medical judgment may be exercised in the light of all factors—physical, emotional, psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors may relate to health." (citation omitted)).

Fast forward nearly two decades, to March 1990. The Territory of Guam enacted Public Law 20-134 to "protect the unborn children of Guam … from the moment of conception until birth at every stage of biological development." Guam Pub. L. 20-134, § 1 (1990). The law made abortion-performance (not including the termination of a pregnancy that "would endanger the life of the mother or would gravely impair the health of the mother") a third-degree felony and also outlawed the solicitation of abortions. *Id.* §§ 2–5. Section 7 of the law provided for a referendum—if a majority of Guam's voters voted to repeal the law, the law would be repealed "in its entirety."

Though it came nearly 20 years after *Roe*, the passage of Public Law 20-134 did not amount to an act of legislative defiance. In 1990, it was unclear whether *Roe* applied to Guam and the other United States territories. *See Guam Soc'y of Obstetricians & Gynecologists v. Ada* (*Ada II*), 962 F.2d 1366, 1370 (9th Cir. 1992), *as amended* (June 8, 1992) ("Accordingly, we hold that *Roe v. Wade* applies to Guam as it applies to the states."). And, of course, if *Roe* didn't apply

to Guam, Public Law 20-134 would have had no constitutional problem.

But four days after Guam enacted Public Law 20-134, a group of abortionists sued to enjoin its enforcement. *Guam Soc'y of Obstetricians & Gynecologists v. Ada* (*Ada I*), 776 F. Supp. 1422, 1426 (D. Guam 1990). To the district court, the question presented was straightforward: "Is *Roe v. Wade* the law in the Territory of Guam?" *Id.* (footnote omitted). The district court answered in the affirmative and "permanently enjoined" territory officials "from enforcing and/or executing any portion of Public Law 20-134." *Id.* at 1426, 1431. A panel of our court affirmed. *See Ada II*, 962 F.2d at 1368.

With its abortion ban permanently enjoined, Guam proceeded to codify numerous abortion restrictions that could satisfy the demands of *Roe* and its spawn. For example, Guam law required minor females to obtain the written consent of a parent or legal guardian before obtaining an abortion. *See* 19 Guam Code Ann. § 4A102. Guam also banned partial-birth abortions under pain of criminal penalty, *see* 10 Guam Code Ann. § 91A106, and required abortionists to provide information about relevant abortion procedures and the medical risks of abortion to pregnant women seeking abortions, *see id.* § 3218.1.

And then—still decades later—the Supreme Court issued its 2022 decision in *Dobbs*. The Court finally overruled *Roe* and established that the rational-basis test governs review of all state abortion regulations. *See Dobbs*, 597 U.S. at 231, 300–01. Under that standard, an abortion regulation deserves "a 'strong presumption of validity.'" *Id.* at 301 (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). It survives judicial scrutiny as long as "there is a rational basis

GUAM SOC'Y OF OBSTETRICIANS & GYNECOLOGISTS V. MOYLAN 9

on which the legislature could have thought that it would serve legitimate state interests," such as "respect for and preservation of prenatal life at all stages of development." *Id.* (citations omitted).

At last, the supreme legal incoherence that had prevented Guam from enforcing its democratically enacted abortion ban had been eliminated. In response to *Dobbs*, Moylan moved, under Federal Rule of Civil Procedure 60(b), to vacate the federal permanent injunction against the enforcement of Public Law 20-134. Moylan argued that because "*Roe* and its progeny are no longer the law … there is no longer a legal basis to support the injunction."

The abortionists opposed Moylan's motion, as did Guam's governor and the administrator of Guam Memorial Hospital (collectively "Appellees"). The district court denied the motion, concluding that Moylan failed to meet his burden for vacating the injunction. Moylan appealed the adverse order.

But simultaneously, the opponents of Moylan's attempt to remove the now-obsolete injunction fought against his efforts on another front. In addition to opposing him in federal court, Guam's governor went to Guam's territorial courts seeking a declaratory judgment that, among other things, Public Law 20-134 "had been impliedly repealed by subsequent acts of the Guam Legislature." *In re Leon Guerrero*, No. CRQ23-001, 2023 WL 7178992, at *1 (Guam Oct. 31, 2023), *cert denied sub nom. Moylan v. Guerrero*, 145 S. Ct. 136 (2024). That effort was successful. While the federal appeal was pending, the Supreme Court of the Territory of Guam issued a decision answering that question in the affirmative. It held that the enactment of the partial-birth abortion ban, the parental-consent requirement,

and the information rules—precisely the regulations that Guam had adopted *because* it was restrained from enforcing Public Law 20-134—amounted to an implied repeal of Public Law 20-134. *Id.* at *12.

The Guam Supreme Court's declaratory judgment made the decision for the panel of our court straightforward. In a two-sentence disposition, the panel dismissed the appeal "as moot" in light of that judgment.

## II.

### A.

"It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) (citation omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (citation omitted). Both the Supreme Court and our court "have repeatedly held that a case is moot when the challenged statute is repealed, expires, or is amended to remove the challenged language." *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019). "Where there is nothing left of a challenged law to enjoin or declare illegal, further judicial action would necessarily be advisory and in violation of the limitations of Article III." *Id.* "To test whether subsequent developments have mooted a suit," our court "ask[s] whether the claim could have been brought 'in light of the … statute as it now stands.'" *Id.* (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (second alteration in original)).

Here, the Guam Supreme Court declared—as a matter of local law—that Public Law 20-134 "no longer possesses any

force or effect in Guam." *In re Leon Guerrero*, 2023 WL 7178992, at *13. The panel in this case correctly concluded that moots Moylan's appeal because even if Moylan prevailed on the merits (and our court instructed the district court to dissolve the permanent injunction), the declaratory judgment of *In re Leon Guerrero* would still completely eliminate Moylan's ability to enforce the now-repealed abortion ban. Thus, "it is impossible for [our] court to grant any effectual relief whatever to [Moylan]." *Decker*, 568 U.S. at 609 (citation omitted).

The Fifth Circuit encountered similar facts—and reached the same legal conclusion—in *McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004). There, Norma McCorvey (the original plaintiff in *Roe*), filed a Rule 60(b) motion in the original *Roe* case in an effort to have the district court revisit its injunction against the abortion laws at issue in *Roe*. *Id.* at 847. The district court denied the motion, reasoning that "McCorvey's motion … was not filed within a reasonable time after final judgment was entered." *Id.* But the Fifth Circuit dismissed the appeal as moot. Relying on Texas law, the court reasoned that "[t]he Texas statutes that criminalized abortion … and were at issue in *Roe* ha[d], at least, been repealed by implication." *Id.* at 849. That mooted McCorvey's Rule 60(b) motion. *Id.*

The case for mootness is, if anything, even stronger here than it was in *McCorvey*. The *McCorvey* court acknowledged that the implied-repeal issue was a matter of Texas state law. *See id.* But the *McCorvey* court didn't cite to any state-court decision holding that the statutes at issue had been impliedly repealed. *See id.* In contrast, here, the Guam Supreme Court unambiguously declared, under Guam law, that Public Law 20-134 "has been impliedly repealed by the Guam Legislature and no longer possesses any force

or effect in Guam." *In re Leon Guerrero*, 2023 WL 7178992, at \*13.

To be sure, an important exception exists to the general rule that the repeal of a statute moots a lawsuit challenging the constitutionality of that statute. If "there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it," then the case is not moot. *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc). But not even Moylan argues this exception applies. Plaintiffs argue that the "exception does not apply to the instant case," and it's clear enough why they're right about that: even assuming Guam is ready to reenact an abortion ban, the legal basis for the original injunction against the abortion ban (the binding nature of *Roe*) no longer exists, so the exception serves no purpose on these facts.

Implicit in the reasonable-expectation-of-reenactment exception to mootness is the anticipation that the reenacted statute will present the same constitutional problem that the original statute presented. That's the only reason the exception exists: to prevent a state government from evading judicial review of a questionable statute by "repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993); *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982) (applying the exception where the defendant city repealed "the objectionable language" of an ordinance but announced an intention to reenact "precisely the same provision" if the judgment of unconstitutionality were vacated). In other words, the exception applies when the challenged statute is technically repealed, but the "challenged conduct" continues

under a different name. *Ne. Fla. Chapter of Associated Gen. Contractors*, 508 U.S. at 662 n.3.

That's not what we have here. Even if tomorrow Guam were to enact an abortion ban substantively similar to Public Law 20-134, such a law would have no nexus to the injunction in this case, which applies to a different statute and which was based entirely on a case (*Roe*) that the Supreme Court has expressly overruled. Such a ban would of course not be immune to a *different* challenge, but such a challenge would be just that: a wholly new one. Not a continuation of the challenge that began this case, which arose under a legal framework incompatible with current Supreme Court precedent.

Like night follows day, it follows from the panel's mootness conclusion that the current permanent injunction would *not* restrain Moylan—or a future enforcing official in Guam—from enforcing any future abortion ban should Guam lawmakers choose to enact one. Indeed, if the injunction against Public Law 20-134 applied to future Guam abortion regulations, then this case *wouldn't* be moot: it would be possible to grant Moylan "effectual relief" by vacating the injunction. *Decker*, 568 U.S at 609. The only reason that this case is moot is because Moylan is not effectively bound by the injunction, which applies *only* to a statute that, under Guam law, does not exist. Moylan would obviously not be bound by the now defunct injunction with respect to any future law enacted by Guam.

## B.

At a broader level, this case highlights something far more serious than a routine application of mootness doctrine: the pernicious—and often irreversible—ramifications of judicial overreaching. If *Roe* had come out correctly,

abortion would be illegal in Guam today.  Solely because the *Roe* Court abused its authority and got it wrong—and notwithstanding the Court's decades-later correction in *Dobbs*—the legal status of abortion in Guam has undergone a complete reversal that remains today.

Imagine that *Dobbs*—not *Roe*—was the law in 1990, when Guam codified Public Law 20-134.  Perhaps abortionists would have sued to enjoin it.  But such a challenge to the abortion-ban provisions on due-process grounds would have fallen flat on its face.  Guam enacted the ban "to protect the unborn children of Guam … from the moment of conception until birth at every stage of biological development."  Guam Pub. L. 20-134, § 1 (1990).  Under *Dobbs*, this easily passes as a legitimate state interest.  597 U.S. at 301.  And "there is a rational basis on which the [Guam] legislature could have thought" that Public Law 20-134 would serve that interest.  *Id.*  The legislature specifically found that "unborn children have protectible interests in life, health, and well-being," and there is a reasonable relationship between outlawing abortion (which terminates an unborn life) and Guam's interest in preserving unborn life.  Guam Pub. L. 20-134, § 1 (1990).  The statute easily satisfies rational-basis review.

*Roe*, and the seven unelected people who fabricated it, are not only 100% culpable for the fact that abortion was legal in Guam from 1990–2022; they remain 100% responsible for the fact that abortion is still legal in Guam today.  Absent *Roe*, the district court never would have enjoined the enforcement of the abortion ban, and Guam never would have needed to enact the *Roe*-compliant abortion restrictions that provided the basis for the Guam Supreme Court's later determination that the abortion ban was impliedly repealed.  Bad judicial decisions, it turns out,

don't happen in a vacuum and are not so easily remedied. They continue to affect policy, culture, and millions of lives long after they are ostensibly "fixed."

In a separate concurrence in *McCorvey*, Judge Edith Jones pointed out, in 2004, that the Supreme Court has failed us *"not only* [in] the abortion decisions, but [in] a number of other areas in which the Court [has] unhesitatingly step[ped] into the realm of social policy under the guise of constitutional adjudication." *McCorvey*, 385 F.3d at 853 (Jones, J., concurring). Over twenty years later, our current Supreme Court seems to be doing a better job. In *Dobbs*, the Court admitted the error of its ways in the abortion decisions and corrected course, finally allowing pro-life governments their fair chance at bat fifty years late and tens of millions of unborn lives short. But let's be honest. Our judiciary's approach—through these decisions and others—of undemocratically cramming social policy down the throats of the American people has succeeded even when the improper decisions are later reversed. Illegitimate legal rulings affect and transform social mores. And merely "correcting" the law later often doesn't reverse the ramifications of decades-old and despicable constitutional jurisprudence that our country has long since accepted as dogma. Judicial activism has run up the score on democracy. Leveling the playing field for the rest of the game may be the only practical solution, but make no mistake: that "solution" is a poor one, and it doesn't remove any ill-gotten points from the scoreboard.

## III.

This is a sad case, but perhaps it can serve as a reminder that while the parties in our social-engineering rulings may come and go, the broader effects of those decisions (whether

good or bad) persist. *See Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (describing "the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution").  For worse, not for better, our country is in many ways now run by judges.  And while there may be little hope that our judiciary will ever willingly surrender the reins of power that we have aggregated for ourselves by our own judicial fiat, I cannot help but bring attention to it with the hope that someday more in our nation will recognize the huge and enduring social costs of judicial overreach and view it with the deep distrust it deserves.  Judges are not good at running a country.